James G. Snell, CA Bar No. 173070
JSnell@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, California 94304-1212
Telephone: +1.650.838.4300
Facsimile: +1.650.838.4350

Ellie Chapman, CA Bar No. 305473
EChapman@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

Attorneys for Defendant Amerit Fleet Solutions, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ANGEL JIMENEZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERIT FLEET SOLUTIONS, INC.,<br><br>Defendant. | Case No. 3:24-cv-03315-MMC<br><br>**AMERIT FLEET SOLUTIONS, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS PUTATIVE CLASS CLAIMS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: Oct. 18, 2024<br>Time: 9 a.m.<br>Judge: Maxine M. Chesney<br>Trial Date: TBD<br>Date Action Filed: June 3, 2024 |

## TABLE OF CONTENTS

I. Introduction .......... 2
II. Background .......... 3
 A. Jimenez's Employment With AFS .......... 3
 B. Jimenez Agreed to the MAAC, a Binding Arbitration Agreement .......... 3
 C. The MAAC Covers Jimenez's Claims .......... 4
 D. Jimenez Filed This Class Action Despite the MAAC .......... 5
III. Argument .......... 6
 A. The Law Strongly Favors Arbitration .......... 6
 B. The FAA Applies to the MAAC .......... 7
 C. The Court Should Compel Individual Arbitration .......... 7
  1. The MAAC Is Valid .......... 8
  2. Jimenez's Claims Fall Squarely Within the Scope of the MAAC .......... 9
  3. The MAAC Is Enforceable .......... 11
   a. The MAAC is not procedurally unconscionable. .......... 12
   b. The MAAC is not substantively unconscionable. .......... 13
 D. Jimenez's Putative Class Claims Should Be Dismissed Because Jimenez Agreed to Waive Them .......... 14
IV. Conclusion .......... 15

## TABLE OF AUTHORITIES

**CASES**

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) .......... 7

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) .......... 6, 12, 13, 14

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 6, 15

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) .......... 7, 10

*Baer v. Tesla Motors, Inc.*,
No. 23-CV-02274, 2024 WL 3641393 (N.D. Cal. Aug. 1, 2024) .......... 15

*Bell v. Redfin Corp.*,
No. 20-CV-2264, 2021 WL 5444791 (S.D. Cal. Aug. 12, 2021) .......... 10

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) .......... 9

*Buckhorn v. St. Jude Heritage Med. Grp.*,
121 Cal. App. 4th 1401 (2004) .......... 10

*Yu v. Volt Info. Scis., Inc.*,
No. 19-CV-01981, 2019 WL 3503111 (N.D. Cal. Aug. 1, 2019) .......... 11

*Chamber of Com. of the U.S. v. Bonta*,
62 F.4th 473 (9th Cir. 2023) .......... 13

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .......... 7, 8

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) .......... 6

*Clements v. T-Mobile USA, Inc.*,
No. 22-CV-07512, 2024 WL 251326 (N.D. Cal. Jan. 19, 2024),
*reconsideration denied* No. 22-CV-07512, 2024 WL 2060866 (N.D. Cal. May 8, 2024) .......... 11, 12

*DiGiacinto v. Ameriko-Omserv Corp.*,
59 Cal. App. 4th 629 (1997) .......... 9

*Felix v. Amerit Fleet Sols., Inc.*,
No. 21STCV14498, 2021 Cal. Super. LEXIS 84670 (Cal. Super. Ct. Nov. 22, 2021) .......... 2

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) .......... 8

*Garcia v. GMRI, Inc.*,
No. 12-cv-10152, 2013 WL 10156088 (C.D. Cal. May 17, 2013) .......... 9

*Iskanian v. CLS Transp. L.A., LLC*,
59 Cal. 4th 348 (2014), *overruled on other grounds by Quach v. California Com. Club, Inc.*, 16 Cal. 5th 562 (2024), *and abrogated on other grounds by Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022) .......... 15

*Jackson v. Tic--The Indus. Co.*,
No. 13-CV-02088, 2014 WL 1232215 (E.D. Cal. Mar. 24, 2014) .......... 14

*Kilgore v. KeyBank Nat'l Ass'n*,
718 F.3d 1052 (9th Cir. 2013) .......... 12

*Lagatree v. Luce, Forward, Hamilton & Scripps LLP*,
74 Cal. App. 4th 1105 (1999) .......... 14

*Malone v. Superior Ct.*,
226 Cal. App. 4th 1551 (2014) .......... 7

*Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*,
186 Cal. App. 4th 696 (2010) .......... 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 6, 7

*Nagrampa v. MailCoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006) .......... 14

*Norde v. Ctr. for Autism & Related Disorders, LLC*,
No. 22-CV-00639, 2022 WL 4227274 (N.D. Cal. Aug. 22, 2022) .......... 12

*Peng v. First Republic Bank*,
219 Cal. App. 4th 1462, *as modified* (Oct. 2, 2013) .......... 13

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
55 Cal. 4th 223 (2012) .......... 8, 9, 12

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017) .......... 13

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) .......... 8

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010) .......... 6

*Reyes v. Macy's, Inc.*,
202 Cal. App. 4th 1119 (2011) .......... 15

*Robbins v. Checkr, Inc.*,
No. 19-cv-05717, 2020 WL 4435139 (N.D. Cal. July 30, 2020) .......... 9

*Sanchez v. Valencia Holding Co.*,
61 Cal. 4th 899 (2015) .......... 12, 13

*Saunders v. Collabera, Inc.*,
No. 20-CV-15207, 2021 WL 3291685 (D.N.J. July 31, 2021) .......... 10, 11

*Schatz v. Allen Matkins Leck Gamble & Mallory LLP*,
45 Cal. 4th 557, *as modified* (Mar. 11, 2009) .......... 9

*Serafin v. Balco Props. Ltd.*,
235 Cal. App. 4th 165 (2015) .......... 13

*Smith v. Spizzirri*,
601 U.S. 472 (2024) .......... 3, 14

*Stewart v. Preston Pipeline Inc.*,
134 Cal. App. 4th 1565 (2005) .......... 8

*Teamsters Loc. 315 v. Union Oil Co. of Cal.*,
856 F.2d 1307 (9th Cir. 1988) .......... 10

*Tucker v. Amerit Fleet Sols., Inc.*,
No. 21STCV22266, 2021 Cal. Super. LEXIS 101714 (Cal. Super. Ct. Oct. 15, 2021) .......... 2

*Varela v. Lamps Plus, Inc.*,
No. CV 16-577, 2016 WL 9110161 (N.D. Cal. July 7, 2016), *aff'd*, 701 F. App'x 670 (9th Cir. 2017), *rev'd on other grounds*, 587 U.S. 176 (2019) .......... 10

**STATUTES**

9 U.S.C. §§ 1-16 (Federal Arbitration Act) .......... passim

Cal. Civ. Code § 1550 .......... 8

Cal. Civ. Code § 1556 .......... 9

Cal. Civ. Code § 1614 .......... 9

Cal. Civ. Code § 1633.7(a)........ 8
Cal. Civ. Proc. Code § 1281.4........ 14

## NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 18, 2024, at 9 a.m., or as soon thereafter as this motion may be heard in the above-titled Court, located at located at 450 Golden Gate Avenue, 19th Floor, Courtroom 7, San Francisco, CA 94102, Defendant Amerit Fleet Solutions, Inc. ("AFS") will and hereby does move this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), for an order compelling Plaintiff Angel Jimenez ("Jimenez") to arbitrate his individual claims against AFS in his Class Action Complaint ("Complaint" or "Compl.") (Dkt. 1) and dismissing putative class claims (the "Motion"). This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declarations of Jennifer Stephens ("Stephens Decl.") and James Snell ("Snell Decl."), and the exhibits attached thereto, all pleadings and papers on file in this matter, and upon such matters as may be presented to the Court at the time of hearing on this Motion or otherwise.

## STATEMENT OF RELIEF SOUGHT

AFS seeks an order compelling arbitration of Jimenez's individual claims in the Complaint and dismissing putative class claims.

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should compel arbitration of Jimenez's individual claims and dismiss putative class claims in light of the binding arbitration agreement between Jimenez and AFS, which explicitly requires the arbitration of Jimenez's individual claims and waives class claims.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

When Mr. Jimenez was hired as a Trailer Technician with AFS, he signed the Mutual Agreement to Arbitrate Claims (the "MAAC") as a condition of his employment. In doing so, he agreed to resolve this dispute through individual arbitration and waive his class claims. He agreed after receiving ample notice of the MAAC, having the opportunity to review, and signing it by affirmatively checking a box under bold text stating that he understood its terms. Jimenez did not reject the MAAC by declining to sign it after reviewing it, affirmatively opting out, and/or resigning his position at AFS. The Court should therefore compel arbitration of his individual claims and dismiss his putative class claims.

Two other California courts recently enforced the very same arbitration agreement at issue here. In October 2021, the Honorable Timothy Patrick Dillon of the Superior Court of the State of California for the County of Los Angeles ("Los Angeles Superior") granted AFS' motion to compel arbitration of plaintiff's claims, because the plaintiff agreed to the MAAC as a condition of his employment—just as Jimenez did here. Snell Decl. ¶ 3, Ex. 1 (Minute Order, *Tucker v. Amerit Fleet Sols., Inc.*, No. 21STCV22266, 2021 Cal. Super. LEXIS 101714 (Cal. Super. Ct. Oct. 15, 2021)). And just one month later, in November 2021, the Honorable Carolyn B. Kuhl of Los Angeles Superior compelled arbitration of two other AFS employees' claims for identical reasons. *See* Snell Decl. ¶ 4, Ex. 2 (Minute Order, *Felix v. Amerit Fleet Sols., Inc.*, No. 21STCV14498, 2021 Cal. Super. LEXIS 84670 (Cal. Super. Ct. Nov. 22, 2021)). Though the case was a putative class action, Judge Kuhl compelled individual arbitration of plaintiffs' claims because the MAAC included a "clear waiver of the right to proceed on a class-wide basis," including in arbitration. *Id.* Judge Kuhl's and Judge Dillon's decisions are consistent with the scores of cases in this District and throughout the Ninth Circuit requiring arbitration of individual claims when a binding arbitration agreement with a class action waiver, like the MAAC, clearly applies.

Despite the MAAC's clear application, Jimenez refuses to honor his agreement with AFS to arbitrate this dispute. Accordingly, AFS respectfully requests that the Court enforce the parties'

agreement, and: (1) compel Jimenez's individual claims to arbitration,[1] and (2) dismiss his putative class claims.

## II. BACKGROUND

### A. Jimenez's Employment With AFS

AFS is a General Stock Corporation incorporated in California, with its principal office in Walnut Creek, California. *See* Compl. ¶ 9. Though based in California, its operations are nationwide: It is a fleet maintenance company that provides comprehensive service solutions for private, public, and for-hire fleets, including on-site and off-site maintenance and management, mobile repair services, and rural market co-ops to clients all over the country. *Id.* ¶ 13; *see also* Stephens Decl. ¶ 4.

Jimenez worked at AFS as a Trailer Technician from approximately December 2022 to July 2023. Stephens Decl. ¶¶ 6, 14.

### B. Jimenez Agreed to the MAAC, a Binding Arbitration Agreement

AFS' offer of employment to Jimenez in December 2022 was contingent upon his execution of the MAAC. *Id.* ¶¶ 7-8. Upon accepting his offer of employment, AFS' onboarding team sent Jimenez a link to his personal email address to its recruiting portal, iCIMS.[2] *Id.* ¶ 8. After logging into iCIMS using a unique password of his own creation, Jimenez was prompted to access and review all onboarding documents, including the MAAC, through iCIMS. *Id.* Jimenez electronically signed the MAAC on December 10, 2022, at 9:28 a.m. *Id.* ¶ 11. The MAAC was a separate, stand-alone agreement that was not encompassed in any other document between the parties. *Id.* ¶ 12.

---

[1] Under *Smith v. Spizzirri*, 601 U.S. 472, 474 (2024), the Court must stay Jimenez's individual claims pending arbitration.

[2] AFS has summarized its onboarding process through iCIMS in this Motion. Further details about how employees access iCIMS and go through the process acknowledging policy documents, including the MAAC, are detailed in the Stephens Declaration, filed concurrently herewith.

### C. The MAAC Covers Jimenez's Claims

The MAAC Jimenez agreed to expressly stated in bold type as follows:

> **Employees should read this Agreement carefully, as it provides that virtually any dispute related to employment must be resolved only through binding arbitration. Arbitration replaces the right of both parties to go to court, including the right to have a jury or government agency decide the parties' claims. Also, this Agreement prohibits employees and the Company from filing, opting into, becoming a class member in, or recovering through a class action, collective action, or other representative action or similar joint proceeding, except as otherwise stated herein.**
>
> **This agreement is a condition of employment. An employee's failure to sign this agreement does not change the employer's intention that all employees be bound by the Agreement and the terms set forth below. If an employee fails to affirmatively opt out of this Agreement, (s)he will be bound by its terms. To be clear, expressing a desire to opt out of the Agreement will disqualify the employee from working for the Company.**

Stephens Decl. ¶ 12, Ex. 1 (emphasis in original).

The MAAC states that it is governed by the FAA, and requires both AFS and the employee to submit to "binding arbitration" "all employment-related disputes." *Id.* It provides that the Agreement "applies equally to disputes related to employment raised by either the employees or by the Company." *Id.*

The MAAC also identifies the type of disputes that the parties agreed to arbitrate. *Id.* Specifically, it provides in pertinent part:

> In consideration for employment or continued employment at Amerit Fleet Solutions (the "Company"), the Company and Employee hereby mutually agree that **any claims arising out of or relating to Employee's employment at the Company** or the termination of that employment ("Claims") shall be resolved through binding arbitration. **The disputes covered under this Agreement include any dispute between an employee and any other person where: (1) the employee seeks to hold the Company liable on account of the other person's conduct** or (2) the other person is also covered by this Agreement and the dispute arises from or relates to employment, including termination from employment, with the Company. **The disputes covered under this Agreement also include any dispute the Company might have with a current or former employee which arises or relates to employment**. **A dispute is based on a legal claim and is subject to the Agreement if it arises from or involves a claim under federal, state, or local statute . . . or common law doctrine, including, but not limited to . . . claims for breach of any contract or covenant (express or implied)**; **tort claims**; . . . **and claims for violation of any federal, state, or other governmental law, statute,**

**regulation, ordinance, or common law[.]**

*Id.* (emphasis added). The MAAC also defines the types of claims that are expressly excluded from the MAAC. *Id.*

Additionally, the MAAC contains a separate section, in bold and italics typeface, entitled "***Class/Collective/Representative Action Waiver***." *Id.* It provides that:

> all parties covered by this Agreement expressly waive any right with respect to any Claims to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant, or member in a class action, collective action, or other representative or joint action[.]

*Id.*

Under the MAAC, individual arbitration should take place with the American Arbitration Association ("AAA"), and AAA's Employment Arbitration Rules and Mediation Procedures Rules (the "AAA Rules") apply to that individual arbitration. *Id.* The MAAC authorizes discovery and preliminary motions, consistent with the Federal Rules of Civil Procedure, and provides that the Federal Rules of Evidence apply at arbitration. *Id.* It also provides that, other than the initial filing fee, AFS will pay all the "administrative fees and costs of the arbitrator." *Id.*

Additionally, the MAAC provides that a "single neutral" arbitrator with "extensive experience and qualifications in employment law," that is "selected by mutual agreement or through the AAA according to its Rules and with both parties' participation" shall preside over the arbitration. *Id.* The arbitrator's "final written decision" shall be "final and binding upon the parties." *Id.* And, under the MAAC, the arbitrator can award "any remedy to which that party is entitled under applicable law . . . in his or her individual capacity in a court of law for the claims presented to and decided by the arbitrator, . . . whether legal or equitable." *Id.*

**D. Jimenez Filed This Class Action Despite the MAAC**

On June 3, 2024, Jimenez filed the Complaint in the U.S. District Court for the Northern District of California. He asserts nine claims against AFS on behalf of himself and a nationwide class: (1) negligence; (2) negligence per se; (3) breach of implied contract; (4) invasion of privacy; (5) unjust enrichment; (6) breach of fiduciary duty; (7) violation of California's Unfair Competition

Law; (8) violation of the California Consumer Privacy Act; and (9) Declaratory Judgment. Compl. ¶¶ 95-209.

All of Jimenez's claims are premised on alleged harms stemming from a third party's unauthorized access to AFS' network systems in or around January 2024 (the "Incident"), which potentially impacted certain current and former employee personal information collected and stored by AFS. *Id.* ¶¶ 18-35. Jimenez was one of the AFS employees potentially impacted by the Incident, as the Incident involved information collected and stored in connection with Jimenez's employment. *Id.* ¶¶ 21-22.

In an effort to meet and confer regarding the MAAC, counsel for the parties engaged in a telephone call on July 10, 2024, and exchanged subsequent emails on July 10, 2024 and July 15, 2024. Snell Decl. ¶¶ 5-6. Nonetheless, Jimenez was unwilling to dismiss or stay the matter in favor of arbitration. *Id.* ¶ 6. AFS now moves to compel individual arbitration and dismiss putative class claims following its unsuccessful meet and confer efforts. *Id.* ¶¶ 5-6.

## III. ARGUMENT

### A. The Law Strongly Favors Arbitration

Congress enacted the FAA in 1925, to "compel[] judicial enforcement of a wide range of written arbitration agreements" and in response to the "hostility of American courts to the enforcement of arbitration agreements[.]" *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). The FAA represents a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) and *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). "California law, like federal law, favors enforcement of valid arbitration agreements." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 97 (2000). The "principal purpose of the FAA is to ensur[e] that private arbitration agreements are enforced according to their terms." *Concepcion*, 563 U.S. at 344 (citation and quotations omitted). Thus, the Supreme Court has made clear that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. In fact, arbitration should be ordered "unless it may be said with positive

assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks and citation omitted).

**B. The FAA Applies to the MAAC**

Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The phrase "involving commerce" is the functional equivalent of "affecting" commerce and signals "an intent to exercise Congress' commerce power to the full." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74, 277 (1995).

Here, the FAA applies to the MAAC. *First*, the MAAC expressly states that it is governed by the FAA, and mandates application of the Federal Rules of Civil Procedure and Federal Rules of Evidence. Stephens Decl. ¶ 12, Ex. 1. *Second*, the MAAC involves interstate commerce because Jimenez worked as a Trailer Technician for AFS, a fleet maintenance company that provides services nationwide. Stephens Decl. ¶¶ 4, 6; *see also* Compl. ¶ 13. Because the MAAC undoubtedly affects interstate commerce, the FAA applies. *See, e.g.*, *Malone v. Superior Ct.*, 226 Cal. App. 4th 1551, 1565-66 n.13 (2014) (noting no suggestion that arbitration agreement's statement that FAA applied was untrue).

**C. The Court Should Compel Individual Arbitration**

Section 4 of the FAA expressly authorizes "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition [the court] . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. When evaluating a motion to compel arbitration, the Court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The Motion should be granted because the parties entered into a valid and enforceable arbitration agreement that encompasses the present dispute.

### 1. The MAAC Is Valid

If a valid arbitration agreement exists, it should be enforced despite challenges to the underlying contract. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) (holding a "federal court may consider only issues relating to the making and performance of the agreement to arbitrate"). In making this determination, courts apply state law rules of contract interpretation. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (finding that "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts"). Because this case arises in California, California contract principles govern contract formation. *See id.*; *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) (noting "[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate") (alteration in original) (citations omitted). Under California law, a valid contract exists when: (1) there was mutual consent; (2) the contract had a lawful objective; (3) the contract was supported by sufficient cause or consideration; and (4) the parties were capable of contracting. Cal. Civ. Code § 1550; *see Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1585-86 (2005). All four elements exist here.

*First*, mutual consent to the MAAC is established by the parties' respective signatures assenting to the MAAC. *See Pinnacle*, 55 Cal. 4th at 236 (finding that "[a] party's acceptance of an agreement to arbitrate may be express, as where a party signs the agreement."). AFS, through its CEO, signed and agreed to the MAAC. Stephens Decl. ¶ 12, Ex. 1. Jimenez consented to the MAAC by electronically signing it. *Id.* ¶¶ 11-12, Ex. 1; *see also* Cal. Civ. Code § 1633.7(a) ("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form."). By doing so, Jimenez expressly indicated his agreement to bring covered claims in individual arbitration. Because AFS and Jimenez both signed the MAAC, each party expressly consented to its terms. *See Pinnacle*, 55 Cal. 4th at 236.

*Second*, the MAAC had a lawful objective—providing for the resolution of disputes through binding arbitration. *See, e.g.*, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (the FAA "embodies the national policy favoring arbitration"); *Schatz v. Allen Matkins Leck*

*Gamble & Mallory LLP*, 45 Cal. 4th 557, 564 (citation omitted) (there is a "strong public policy in favor of arbitration"), *as modified* (Mar. 11, 2009).

*Third*, the MAAC was supported by sufficient consideration. The mutual promises and advantages of arbitration, rather than litigating in court, are sufficient consideration. *See, e.g.*, *Robbins v. Checkr, Inc.*, No. 19-cv-05717, 2020 WL 4435139, at *3 (N.D. Cal. July 30, 2020) ("Because the arbitration agreement here mutually binds Checkr and Robbins, it is supported by adequate consideration."). Additionally, under California law, continued employment constitutes adequate consideration for changes to an employment contract. *Garcia v. GMRI, Inc.*, No. 12-cv-10152, 2013 WL 10156088, at *5 (C.D. Cal. May 17, 2013) (finding consideration of continued employment existed for changes to the employment contract "because California includes a presumption of at-will employment, Cal. Labor Code § 2922."); *DiGiacinto v. Ameriko-Omserv Corp.*, 59 Cal. App. 4th 629, 637 (1997) (consideration exists because "as a matter of law, an at-will employee who continues in the employ of the employer after the employer has given notice of changed terms or conditions of employment has accepted the changed terms and conditions"). Last, as to consideration, "[a] written instrument is presumptive evidence of a consideration." Cal. Civ. Code § 1614.

*Finally*, the parties were capable of contracting. *See* Cal. Civ. Code § 1556 ("All persons are capable of contracting, except minors, persons of unsound mind, and persons deprived of civil rights."). Accordingly, the existence of a valid contract to arbitrate exists.

**2. Jimenez's Claims Fall Squarely Within the Scope of the MAAC**

In addition to being a valid contract, the MAAC covers the entire dispute between the parties. When the Court determines that the parties have a binding arbitration agreement, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc.*, 475 U.S. at 650 (citation omitted); *see Teamsters Loc. 315 v. Union Oil Co. of Cal.*, 856 F.2d 1307, 1309 (9th Cir. 1988) (citations omitted). Any doubt as to the scope of arbitrable issues is resolved in favor of arbitration. *See, e.g.*, *Bell v. Redfin Corp.*, No. 20-CV-2264, 2021 WL 5444791, at *2 (S.D. Cal. Aug. 12, 2021) (noting ambiguities should be resolved

in favor of arbitration). Indeed, "[t]he burden is on the party opposing arbitration to demonstrate that an arbitration clause *cannot be* interpreted to require arbitration of the dispute." *Buckhorn v. St. Jude Heritage Med. Grp.*, 121 Cal. App. 4th 1401, 1406 (2004) (citation and quotations omitted); *see also Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*, 186 Cal. App. 4th 696, 705 (2010) ("The party opposing arbitration has the burden of showing that the agreement, as properly interpreted, does not apply to the dispute.").

Here, Jimenez's claims—all premised on alleged harms stemming from the Incident—fall directly within the MAAC's scope. *First*, the MAAC broadly covers "***any* claims arising out of or relating to Employee's employment at the Company**." Stephens Decl. ¶ 12, Ex. 1 (emphasis added). Jimenez's claims plainly arise out of and relate to his employment with AFS, in that all claims arise because Jimenez is an AFS employee and AFS collected and stored his personal information in connection with his employment there.[3] *See* Compl. ¶¶ 2-3, 4, 7, 14, 22, 36 (alleging that the Incident potentially impacted AFS' current and former employees' personal information, including Jimenez's personal information—all of which was collected and stored by AFS in connection with their employment at AFS); *see, e.g.*, *Varela v. Lamps Plus, Inc.*, No. CV 16-577, 2016 WL 9110161, at *4 (N.D. Cal. July 7, 2016) ("The Arbitration Agreement [specifies] that it applies to all claims that arise 'in connection with [Varela's] employment.' . . . The [data breach] claim at issue here . . . arises 'in connection' with Varela's employment, in that Lamps Plus collected and stored his personal information in connection with his employment there."), *aff'd*, 701 F. App'x 670 (9th Cir. 2017), *rev'd on other grounds*, 587 U.S. 176 (2019); *Saunders v. Collabera, Inc.*, No. 20-CV-15207, 2021 WL 3291685, at *4 (D.N.J. July 31, 2021) (similar) ("Plaintiff's contention that his [data breach] claims in the present matter are not in connection with or relationship to the employment agreement and fall outside the scope of the arbitration provisions is not persuasive because Plaintiff provided Collabera the alleged exposed information with the specific purpose of attaining employment with Collabera."); *c.f. Yu v. Volt Info. Scis., Inc.*, No. 19-

---

[3] The fact that Jimenez is no longer an AFS employee is not relevant to the analysis. The MAAC expressly provides that it applies to "any dispute the Company might have with a current ***or former employee*** which arises or relates to employment." *See* Stephens Decl. ¶ 12, Ex. 1

CV-01981, 2019 WL 3503111, at *5 (N.D. Cal. Aug. 1, 2019) (finding "questionable" plaintiff's argument that arbitration agreement covering claims arising out of his employment would not cover data breach claims brought against his employer).

*Second*, the MAAC also explicitly covers "**any dispute between an employee and any other person where the employee seeks to hold the Company liable on account of the other person's conduct.**" Stephens Decl. ¶ 12, Ex. 1 (emphasis added). Here, Jimenez is seeking to hold AFS liable for the conduct of the third party who accessed AFS' network systems without authorization. *See, e.g.*, Compl. ¶ 3. The MAAC applies for this reason as well.

*Third*, the MAAC expressly provides for mandatory arbitration of disputes if they "arise[] from or involve[] a claim under . . . state . . . statute, . . . or common law doctrine, including, but not limited to, . . . claims for breach of contract or covenant (express or implied) . . . [or] tort claims[.]" Stephens Decl. ¶ 12, Ex. 1. In the Complaint, Jimenez asserts violations of two California state statutes, a claim for breach of implied covenant, and various tort claims against AFS—all of which are expressly covered by the MAAC. *See* Compl. ¶¶ 95-209.

*Fourth*, Jimenez's claims do not fall into any of the four explicit, clearly-defined exceptions to the MAAC's broad scope—which are plainly described in the MAAC as the "only" applicable exceptions. Stephens Decl. ¶ 12, Ex. 1.

*Finally*, the MAAC does not limit Jimenez's ability to obtain injunctive relief and/or declaratory relief, and grants the arbitrator authority to "award any party any remedy to which that party is entitled under applicable law, whether legal or equitable[.]" *Id.*

Accordingly, the MAAC's broad scope squarely encompasses Jimenez's individual claims, and the Court should compel individual arbitration. *See e.g.*, *Clements v. T-Mobile USA, Inc.*, No. 22-CV-07512, 2024 WL 251326, at *7 (N.D. Cal. Jan. 19, 2024) (granting motion to compel arbitration in data breach case), *reconsideration denied* No. 22-CV-07512, 2024 WL 2060866 (N.D. Cal. May 8, 2024); *Norde v. Ctr. for Autism & Related Disorders, LLC*, No. 22-CV-00639, 2022 WL 4227274, at *1 (N.D. Cal. Aug. 22, 2022) (same).

### 3. The MAAC Is Enforceable

Arbitration agreements are "valid, irrevocable, and enforceable" under the FAA, "save upon

such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party resisting compelled arbitration bears the burden of establishing a defense to enforcement. Jimenez cannot do so here.

Jimenez may argue the MAAC is unenforceable because it is unconscionable. This argument will fail. "The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 910 (2015) (quoting *Armendariz*, 24 Cal. 4th at 114). Unconscionability is viewed on a "sliding scale"; the less procedural unconscionability is present, the more substantive unconscionability is required to invalidate an agreement. *Id.*

**a. The MAAC is not procedurally unconscionable.**

Procedural unconscionability focuses on oppression or surprise. *Pinnacle*, 55 Cal. 4th at 247. Jimenez cannot demonstrate either. There is no evidence that AFS subjected Jimenez to oppressive tactics to force him to enter into the MAAC. Additionally, Jimenez cannot claim any element of surprise because the MAAC cannot be characterized as "hidden." It is a stand-alone document that is unambiguously titled "**MUTUAL AGREEMENT TO ARBITRATE CLAIMS**" and uses bold and italic typeface headings. Stephens Decl. ¶ 12, Ex. 1; *see also Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (finding no procedural unconscionability where, inter alia, arbitration clause was "its own section, clearly labeled, in boldface").

Jimenez may argue procedural unconscionability exists because the MAAC was a mandatory condition of employment. Stephens Decl. ¶¶ 7-8; *see also id.* ¶ 12, Ex. 1. Such an argument, standing alone, does not support a finding that the agreement is unenforceable due to unconscionability. *See, e.g.*, *Serafin v. Balco Props. Ltd.*, 235 Cal. App. 4th 165, 179 (2015) ("[T]he fact that the arbitration agreement is an adhesion contract does not render it automatically unenforceable as unconscionable."); *id.* (enforcing mandatory arbitration agreement and noting "[c]ourts have consistently held that the requirement to enter into an arbitration agreement is not a bar to its enforcement"); *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1466 (enforcing arbitration agreement where offer of employment subject to plaintiff's agreement to be bound by

arbitration agreement), *as modified* (Oct. 2, 2013). Finally, the Ninth Circuit confirmed that California employers may have mandatory arbitration agreements. *See Chamber of Com. of the U.S. v. Bonta*, 62 F.4th 473, 488-89 (9th Cir. 2023) (FAA preempted California's AB51 which limited mandatory arbitration for certain claims under the California Fair Employment and Housing Act and California Labor Code).[4] Ultimately, Jimenez was not coerced into signing the MAAC. The terms of the MAAC were not surprising. Rather, Jimenez fully consented to the MAAC and indicated his intent to be bound by its terms.

**b. The MAAC is not substantively unconscionable.**

Even if Jimenez could show a small degree of procedural unconscionability, which he cannot, he must demonstrate a high degree of substantive unconscionability to avoid enforcement of the MAAC. Any attempt to do so fails. Substantive unconscionability focuses on the actual terms of the agreement and whether they create "overly harsh" or "'one-sided' results." *Armendariz*, 24 Cal. 4th at 114 (citation omitted); *Sanchez*, 61 Cal. 4th at 910-11 (discussing unconscionability standards). Substantive unconscionability only exists where the terms are "unreasonably favorable to the more powerful party," or, phrased differently, "so one-sided as to 'shock the conscience.'" *Sanchez*, 61 Cal. 4th at 910-11 (citations omitted).

Here, the MAAC does not contain one-sided provisions. It is mutual and requires Jimenez and AFS equally to comply with its terms. Stephens Decl. ¶ 12, Ex. 1. Additionally, the MAAC satisfies all the requirements set forth in *Armendariz*, 24 Cal. 4th at 103-13. Specifically, the MAAC provides for a neutral arbitrator, adequate discovery, the types of relief otherwise available in court (except for class arbitration, which is discussed more fully below), a written arbitration award, and requires AFS agrees to pay for the administrative costs and expenses of arbitration. Stephens Decl. ¶ 12, Ex. 1. Moreover, the MAAC is subject to the AAA rules (*id.*), which California courts consider to be "neutral and fair." *See Jackson v. Tic--The Indus. Co.*, No. 13-CV-02088, 2014 WL 1232215, at *10 (E.D. Cal. Mar. 24, 2014) (stating that the AAA's Employment Arbitration Rules are

---

[4] Jimenez may argue procedural unconscionability exists because he was not provided with a copy of the AAA rules. This argument is fatally flawed, and California courts have consistently rejected it. *See, e.g.*, *Peng*, 219 Cal. App. 4th at 1472; *see also Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1262 (9th Cir. 2017).

regarded as neutral and fair and their incorporation helps demonstrate a lack of unconscionability even where there is unequal bargaining power); *see also Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1302 (9th Cir. 2006) ("California courts have uniformly concluded that the AAA provides a neutral forum for dispute resolution."); *Lagatree v. Luce, Forward, Hamilton & Scripps LLP*, 74 Cal. App. 4th 1105, 1126-27 (1999) (stating AAA rules are regarded as neutral and fair). Finally, and notably, Jimenez did not revoke or rescind the agreement. Stephens Decl. ¶ 14. Since the MAAC is devoid of any terms creating an overly harsh or one-sided agreement, Jimenez cannot demonstrate substantive unconscionability. Accordingly, the MAAC is valid and enforceable.

### D. Jimenez's Putative Class Claims Should Be Dismissed Because Jimenez Agreed to Waive Them

Although the Court should compel Jimenez's individual claims to arbitration (and stay his individual claims in this Court),[5] the Court should dismiss Jimenez's putative class claims because Jimenez signed an arbitration agreement that included a clear class action waiver, precluding Jimenez from pursuing a class action in court, arbitration, or otherwise. *See* Stephens Decl. ¶ 12, Ex. 1.[6]

In *Concepcion*, the Supreme Court upheld the enforceability of class action waivers in agreements governed by the FAA. 563 U.S. at 340-51; *see also Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 360 (2014) (confirming class action waivers in arbitration agreements are valid and enforceable), *overruled on other grounds by Quach v. California Com. Club, Inc.*, 16 Cal. 5th

---

[5] *See* 9 U.S.C. § 3 (noting court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement"); *see also Spizzirri*, 601 U.S. at 474 (requiring this Court to stay a plaintiff's individual claims pending arbitration). While the FAA applies here, California law similarly supports a stay. *See* Cal. Civ. Proc. Code § 1281.4 ("If a court of competent jurisdiction, whether in this State or not, has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies."). A stay will preserve judicial resources and comport with the agreement between the parties.

[6] If the Court is not inclined to dismiss class claims, the Court should stay the entire proceeding including Jimenez's putative class claims pending individual arbitration. *See, e.g.*, *Reyes v. Macy's, Inc.*, 202 Cal. App. 4th 1119, 1122 (2011) (upholding order for all of plaintiff's individual claims to be severed and subject to arbitration, while plaintiff's class claims and Private Attorneys General Act claims, and discovery related to those claims, were stayed pending arbitration).

562 (2024), *and abrogated on other grounds by Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022) (abrogating *Iskanian* regarding arbitration of claims under the Private Attorneys General Act). By consenting to the MAAC, Jimenez expressly agreed to waive his right to pursue class or representative actions in court or in arbitration. Jimenez will be unable to present any argument or authority that prohibits enforcement of the Class Action Waiver. It must be enforced as written. *See Concepcion*, 563 U.S. at 340-51; *see, e.g., Baer v. Tesla Motors, Inc.*, No. 23-CV-02274, 2024 WL 3641393, at *4 (N.D. Cal. Aug. 1, 2024) (compelling individual claims to arbitration but dismissing class claims where arbitration agreement contained clear class action waiver). Thus, Jimenez should be compelled to arbitrate his claims on an individual basis only, and his putative class claims should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, AFS respectfully requests that the Court grant their Motion to Compel Individual Arbitration, order the matter to binding individual arbitration, and dismiss putative class claims.

Dated August 29, 2024

**PERKINS COIE LLP**

By: s/ *James G. Snell*
James G. Snell, CA Bar No. 173070
Ellie Chapman, CA Bar No. 305476

*Attorneys for Defendant Amerit Fleet Solutions, Inc.*