James G. Snell, CA Bar No. 173070
JSnell@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, California 94304-1212
Telephone: +1.650.838.4300
Facsimile: +1.650.838.4350

Ellie Chapman, CA Bar No. 305473
EChapman@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

Attorneys for Defendant Amerit Fleet Solutions, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

ANGEL JIMENEZ, on behalf of himself and all others similarly situated,

Plaintiff,

v.

AMERIT FLEET SOLUTIONS, INC.,

Defendant.

Case No. 3:24-cv-03315-MMC

**DECLARATION OF JENNIFER STEPHENS IN SUPPORT OF DEFENDANT AMERIT FLEET SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION**

Date: Oct. 18, 2024
Time: 9 a.m.
Judge: Maxine M. Chesney
Trial Date: TBD
Date Action Filed: June 3, 2024

I, Jennifer Stephens, hereby declare as follows:

1. I am employed as Senior Director of Human Resources for Amerit Fleet Solutions, Inc. ("AFS" or the "Company"). I have been employed with AFS for 14 years.

2. I make this declaration based on my personal knowledge and the information contained in business records of AFS that are regularly made and kept by AFS in the regular and ordinary course of business at or near the time of the events that they accurately portray. I am competent to testify if called upon as a witness.

3. I make this Declaration in support of Defendant AFS' Motion to Compel Individual Arbitration and Dismiss Putative Class Claims (the "Motion") filed by Plaintiff Angel Jimenez ("Jimenez").

4. AFS is a nation-wide fleet maintenance company that provides comprehensive service solutions for private, public and for-hire fleets, including on-site and off-site maintenance and management, mobile repair services, and rural market co-ops for clients nationwide.

5. As part of my employment with AFS, I am familiar with the manner in which the Company maintains employee data. I have access to AFS' records, including personnel files and other employment records. Personnel files and employment records are maintained by AFS, made in the regular course of business, and made at or near the time of the acts, conditions, or events that they accurately portray. The information I reviewed for the purposes of this Motion was entered into and stored in AFS' human resources information system ("HRIS"), PeopleSoft. The information contained in PeopleSoft is made in the regular and ordinary course of business at or near the time it is generated. I have no reason to believe the information in PeopleSoft is inaccurate and believe it to be accurate. Moreover, in the context of my job responsibilities, I am aware of current and former employees who have worked at AFS.

6. I have reviewed Jimenez's personnel records stored in PeopleSoft. Mr. Jimenez commenced employment with AFS in or around December 2022 as a Trailer Technician. The offer of employment to Jimenez made clear that his employment with the company was at-will.

7. As part of AFS' onboarding process (including when Mr. Jimenez commenced

employment), all new hires have been required to sign an arbitration agreement, and acceptance of an arbitration agreement has been a condition of employment. Since June 2016, the process by which new hires sign arbitration agreements has been as follows: AFS sends new hire employees an email to their personal email addresses, which contained a hyperlink to AFS' recruiting portal, iCIMS. By clicking this hyperlink, employees can access and review all onboarding documents, including the arbitration agreement that is a condition of their employment.

8. At the time Mr. Jimenez commenced employment in December 2022, his offer was contingent upon execution of AFS' Mutual Agreement to Arbitrate Claims (the "MAAC"). Upon accepting his offer of employment, AFS' onboarding team sent to Mr. Jimenez's personal email address a hyperlink to AFS' recruiting portal, iCIMS. Mr. Jimenez could access all onboarding documents, including the MAAC, through iCIMS.

9. Mr. Jimenez would only be able to access iCIMS through the link provided to his personal email address. Upon entering iCIMS, Mr. Jimenez was prompted to create and enter a unique password, which would be used thereafter to access iCIMS.

10. After creating his unique password, Mr. Jimenez was prompted to electronically sign AFS' onboarding documents, including the MAAC.

11. On December 10, 2022 at 9:28 a.m., Mr. Jimenez inserted his electronic signature on the MAAC by clicking a box entitled "Employee Signature," directly under bold, capitalized letters stating: "**I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS AND THAT BY SIGNING THIS AGREEMENT, I AM GIVING UP MY RIGHT TO A JURY TRIAL[.]**" The form required Mr. Jimenez to scroll through the entire agreement before he was able to click the box and insert his electronic signature.

12. The MAAC was a separate standalone agreement that was not encompassed in any other document between the parties. Attached hereto as **Exhibit 1** is a true and correct copy of the MAAC Mr. Jimenez signed on December 10, 2022 at 9:28 a.m.

13. The date and time stamp printed next to Jimenez's electronic signature on the

MAAC (December 10, 2022 at 9:28 a.m.) indicated the date and time the electronic signature was made. An electronic signature in the name of "Angel Jimenez" could only have been placed on the MAAC by a person using his unique login and password.

14. After Mr. Jimenez received and signed the MAAC, he started his employment at AFS, and continued his employment with AFS until July 2023. I am not aware of Mr. Jimenez seeking to revoke or rescind the MAAC or asking any questions or raising objections after he signed it.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 29 day of August, 2024, at Marietta, Georgia.

JENNIFER STEPHENS