# Exhibit 1

No *Shepard's* Signal™
As of: August 13, 2024 4:42 PM Z

# Tucker v. Amerit Fleet Solutions

Superior Court of California, County of Los Angeles

October 15, 2021, Decided; October 15, 2021, Filed

21STCV22266.

**Reporter**
2021 Cal. Super. LEXIS 101714 *

EDMUND TUCKER v. AMERIT FLEET SOLUTIONS, INC., A CALIFORNIA CORPORATION, et al.

## Core Terms

arbitration agreement, electronic, signature, arbitration, authenticate, compel arbitration, unconscionable, onboarding, training, declaration, documents, password, preponderance of evidence, hires, supplemental declaration, agreement to arbitrate, initial burden, attaching, employees, username, parties

**Judges:** [*1] Honorable Timothy Patrick Dillon.

**Opinion by:** Timothy Patrick Dillon

## Opinion

Central District, Stanley Mosk Courthouse, Department 73

For Plaintiff(s): Dat Tommy Phan (LA Court Connect)

For Defendant(s): Lara Ariella Grines (LA Court Connect)

**NATURE OF PROCEEDINGS**:

Hearing on Motion to Compel Arbitration (Res ID: 6833);

Case Management Conference

The matters are called for hearing.

Motion is heard and argued. After hearing argument, the court takes the matter under submission. Case management conference is not held and trailed pending the ruling on the motion to compel arbitration.

LATER:

The court, having taken the motion under submission, now rules as follows:

The Motion to Compel Arbitration (Res ID: 6833) filed by David Christy, Amerit Fleet Solutions, Inc., a California corporation on 07/30/2021 is Granted. This action is stayed pending completion of the arbitration.

The case is ordered stayed pending binding arbitration as to the entire action.

Background Information

On June 14, 2021, Plaintiff Edmund Tucker filed this action against Defendants Amerit Fleeting Solutions, Inc. ("AFS"), and David Christy alleging discrimination, harassment, retaliation, failure to prevent, failure to engage in interactive process, [*2] and failure to accommodate under FEHA as well as three retaliation claims under Cal. Lab. Code §§ 1102.5 and 6310 based on Plaintiff's disability (hip surgery/avascular necrosis/alcoholism).

Defendants filed a motion to compel arbitration based on the electronic arbitration agreements between the parties with Plaintiff signed in connection with his employment at AFS in 2011, 2013, and 2018. On October 1, 2021, Plaintiff filed an opposition, contending that he does not recall signing any of the arbitration agreements, challenging Defendants' authentication of the agreements, and arguing that the agreement was unconscionable. On October 7, 2021, Defendants filed a reply.

Analysis

Legal Standard for Establishing Existence of Arbitration Agreement

When a party to an arbitration agreement refuses to submit to arbitration, the other party may petition the court to compel arbitration and stay any pending lawsuit. (Condee v. Longwood Managment Corp. (2001) 88 Cal.App.4th 215, 218 (Condee)). The proceeding to compel arbitration is in essence a suit in equity to

compel specific performance of the arbitration agreement. (Ibid.) California Code of Civil Procedure Section 1281.2 provides:

"On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement [*3] refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that [an exception applies]."

This statutory text was addressed by our Supreme Court in Rosenthal v. Great Western Fin. Securities Corp. (1996) 14 Cal.4th 394 (Rosenthal), when it stated: "Instead, when a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable. Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence." (Id. at 413). The court did not define what it meant by the phrase "accompanied by prima facie evidence of a written agreement" and the facts of that case did not require it to address the sufficiency of the initial petition to compel arbitration. (Rosenthal, supra, 14 Cal.4th at p. 413, italics added.)

The question of the sufficiency of the initial petition to compel arbitration was addressed in more detail in Condee, supra, 88 Cal.App.4th 215. The court stated that section 1281.2 [*4] required the party seeking arbitration to allege the existence of an agreement to arbitrate and quoted a rule of court requiring a copy of the arbitration provisions to be attached to the petition or, alternatively,

"A petition to compel arbitration or to stay proceedings pursuant to Code of Civil Procedure sections 1281.2 and 1281.4 must state, in addition to other required allegations, the provisions of the written agreement and the paragraph that provides for arbitration. The provisions must be stated verbatim or a copy must be physically or electronically attached to the petition and incorporated by reference."

The court in Condee determined the parties seeking arbitration had properly alleged the existence of an arbitration agreement and supported the allegation as provided in the predecessor of Rule 3.1330. (Condee, supra, 88 Cal.App.4th at p. 219.) It also concluded the parties seeking arbitration were not required to follow the normal procedures of document authentication and noted that section 1281.2 "does not require the petitioner to introduce the agreement into evidence." (Condee, supra, at pp. 218, 219.) Furthermore, the court determined the trial court erred in denying the petitions to compel arbitration for failure to authenticate the arbitration agreement when the authenticity of the signature on the document [*5] was never challenged. (Ibid.)

Subsequent cases have considered Condee and analyzed in more detail the initial burden section 1281.2 places on the party seeking arbitration. For example, in Ruiz v. Moss Bros. Auto Group, Inc. (2014) 232 Cal.App.4th 836 (Ruiz), the court stated: "Properly understood, Condee holds that a petitioner is not required to authenticate an opposing party's signature on an arbitration agreement as a preliminary matter in moving for arbitration or in the event the authenticity of the signature is not challenged." (Id. at p. 846.) However, once the authenticity was challenged, the party seeking arbitration "had the burden of proving by a preponderance of the evidence that the electronic signature was authentic (Evid. Code, § 1401)." (Ibid.) The court affirmed the denial of a petition to compel after the defendant-employer proffered an electronically signed arbitration agreement. (Id. at 838-40). In support of its petition, the defendant submitted the declaration of its business manager who "summarily asserted" that the plaintiff-employee electronically signed the agreement. (Id. at 839). The court found that the declaration was insufficient because the manager did not explain how, or on what basis, the manager inferred that the electronic signature was "the act of" the plaintiff-employee; [*6] that the date and time printed on the agreement were accurate; that the electronic signature could only have been placed on the agreement by a person using the plaintiff-employee's unique identification number and password; and that the agreement was therefore signed by the plaintiff. (Id. at p. 844).

In Espejo v. Southern California Permanente Medical Group (2016) 246 Cal.App.4th 1047, the

"that defendants here met their initial burden [to show an agreement to arbitrate] by attaching to their petition a copy of the purported arbitration agreement bearing Espejo's electronic signature." (Id. at p. 1060.) Because Dr. Espejo "challenged the validity of that signature in his opposition, defendants were then required to

establish by a preponderance of the evidence that the signature was authentic." (Ibid.) The defendants filed a supplemental declaration to authenticate Dr. Espejo's signature on the arbitration agreement before the plaintiff filed his opposition. (Ibid.) The trial court struck the supplemental declaration, finding it was untimely under section 1005. The appellate court concluded the trial court had abused its discretion in striking the supplemental declaration because that declaration did not need to be filed within the timeframe established by section 1005, subdivision (b). The appellate court then examined the contents [*7] of the supplemental declaration and determined the factual details established the electronic signature was the act of Dr. Espejo. (Espejo, supra, at p. 1060.)

In Fabian v. Renovate Am., Inc., 2019) 42 Cal. App. 5th 1062, the court affirmed the denial of a petition to compel arbitration because the petitioner failed to prove by a preponderance of the evidence that plaintiff electronically signed the subject argument. (Id. at 1063). The court found that defendant only summarily asserted that plaintiff entered into a contract, but did not state anywhere in his declaration that plaintiff actually signed the contract, electronically or otherwise. (Id. at 1069). Defendant did not explain who presented plaintiff with a physical or electronic copy of the contract, the specific location where the contract was signed, the time the contract was signed, and how defendant ascertained plaintiff was present when the contract was signed. (Id. at 1069-1070). Most importantly, defendant did not explain how plaintiff's electronic initials and signatures were the act of plaintiff by offering evidence that plaintiff had a unique identifying verification code, etc. (Id. at 1070).

Statutorily, to prove the existence of an electronically signed contract, California has enacted the Uniform Electronic Transaction Act, which recognizes the [*8] validity of electronic signatures. (Cal. Civ. Code § 1633.1 & 16337(a)). But any writing must be authenticated before the writing may be received in evidence. (Cal. Evid. Code 1401). "An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." (Cal. Civ. Code § 1633.9).

Analysis re Existence of the Arbitration Agreement

Defendants' Initial Burden

Under Condee, as a preliminary matter, Defendants are not require to authenticate an opposing party's signature. Defendants would meet their initial burden by simply attaching a copy of the arbitration agreement between the parties. Here, Defendants have more than met their initial burden by not only attaching a copy of the arbitration agreement, but by filing a declaration by Jennifer Stephens, Senior Human Resources Business Partner for AFS. In that declaration, she, based on the business records of AFS, testifies:

She reviewed information that was entered into and stored in AFS' human resources information system ("HRIS"), called Empact. On August 1, 2015, [*9] AFS began using a different HRIS system to store employee information called PeopleSoft, which Stephens also reviewed for the declaration. (Mvg. Stephens Decl., 2 & 5.)

She reviewed Plaintiff's personnel records stored in Empact and PeopleSoft. Plaintiff was employed at AFS from December 2011 till January 2012. Plaintiff then worked for AFS again from August 2013 through August 2019 at fleet manager. (Id. at 5.)

As part of AFS' onboarding process since 2011, all new hires were required to sign an arbitration agreement as a condition of their employment. (Id. at 7.) Upon accepting an offer of employment, AFS emailed all new hires their requisite onboarding documents, which included an arbitration agreement, which employees were required to review, print, sign, and either scan or fax back to AFS. (Ibid.)

However, Stephens, despite a diligent search, could not locate the original arbitration agreements that Plaintiff signed at the time of his hire in 2011 or 2013. (Id. at 8.)

AFS uses a management called Jump Start to disseminate trainings and policy documents to employees. Through Stephens' administrator access, she can review trainings that AFS employees have been sent and what has been [*10] completed or not. (Id. at 9.)

The onboarding process is as follows: Employees receive a Jump Start notification through their AFS email. To access Jump Start, each employee is required to login using their unique username and password. The Jump Start homepage will list outstanding tasks that an employee needs to complete, including trainings/policy documents under the "My Learning Plan" tab. An employee will click "Mark Complete" for every training or policy they have received. Once the employee clicks

"Mark Complete," this changes the button to "Acknowledge." Once an

"Acknowledge," a new screen opens which states "I acknowledge and accept receipt of this policy," with two options to either "Cancel" or "Acknowledge." The employee must affirmatively select "Acknowledge" to complete the training. (Id. at 10.)

Stephens logged into Jump Start using her administrator access and reviewed the training transcript for Plaintiff. In 2018 AFS distributed an updated Mutual Agreement to Arbitrate Claims to plaintiff for his review and acceptance. Dan Williams, the CEO of the company, signed the agreement for the Company. Plaintiff's training transcript shows that Plaintiff signed the arbitration [*11] agreement on September 20, 2018 at 8:58:38 a.m. (Id. 12 & Exs. 1-3.)

Based on the steps required to complete and acknowledge a training in Jump Start, Plaintiff's training transcript would not show the task as completed or that he electronically signed the agreement if he did not go through the process set forth above. (Id. 13.)

AFS can also run an audit report from Jump Start, which identifies a transcript assignment date, a transcript due date, a transcript completion date, the user's full name, the USER ID, and the assigned training title. The company retried an audit report from Jump Start for Plaintiff's activity in the system. The audit report confirms that Plaintiff complete the 2018 Arbitration Agreement training on September 20, 2018. (Id., 15 & Ex.4.)

This evidence meets Defendants' preliminary burden to establish the existence of the arbitration agreement. Stephens testifies about the standard steps of the onboarding process, that arbitration is a condition of employment, that all hires, including Plaintiff, are given a unique username and password, and provided transcripts from Plaintiff's Jump Start, and provides a copy of Plaintiff's signature for the 2018 arbitration [*12] agreement. The court finds that these procedures establish an adequate "security procedure applied to determine the person to which the electronic record or electronic signature was attributable" as *Cal. Civ. Code § 1633.9* requires. As for the 2011 and 2013 arbitration agreements, the court finds that Stephens' declaration provides substantial circumstantial evidence that the agreement was entered into by Plaintiff as a condition of his employment—i.e., that all new hires must sign and that Plaintiff continued to work for AFS. (*Craig v. Brown & Root, Inc. (2000) 84 Cal.App.4th 416, 421* (although plaintiff denied receiving documents containing arbitration agreement by mail, a court could infer from balancing the evidence, that sufficient circumstantial evidence exists to find the existence of an arbitration agreement.) Further, Stephens establishes personal knowledge of Defendants' business records as it pertains to employee records and sufficiently authenticates that arbitration agreement as part of Plaintiff's employee files.

Plaintiff's Challenge to Authenticity

In Plaintiff's opposition, Plaintiff challenges the authenticity of arbitration agreement by contending that he has no recollection of receiving or reviewing onboarding documents, including the arbitration [*13] agreement and does not recall signing any arbitration agreement in 2011 and 2013. Plaintiff does admit to utilizing an online platform named JumpStart and stated that he was provided with a username and password by Human Resources to access it. He testifies that he has no recollection of reviewing, acknowledging and/or electronically signing the 2018 agreement using JumpStart. Plaintiff testifies that no one at AFS ever explained to Plaintiff that singing the arbitration agreement was required.

Defendants' Reply

In the reply, Defendants offer a supplemental declaration by Stephens which states:

"Upon hire, AFS provides employees with a password for Jump Start. While each password contains the same format, the passwords are unique in that they include the last four digits of an employee's Social Security Number. This is to ensure that an employee is the only individual who has access to his/her password." (Reply Stephens Decl., 6.)

She used her administrator access to view the IP address associated with an employee's Jump Start Entries. Based on her review of the IP Address involved with Plaintiff's entries, Plaintiff executed the Arbitration Agreement on September 20, 2018 at the same [*14] location where he executed 33 other employment documents. (Id., 12.) Stephens attached Exhibit A, which shows the report showing that the IP address associated with Plaintiff's signature on 34 employment documents, including an entry on September 20, 2018. The report shows access to JumpStart from the same IP address from June 3, 2018 through October 19, 2018.

The Court's Analysis

The court finds that weighing all of the evidence together, Defendants have established by a preponderance of evidence that the 2018 arbitration agreement is valid and signed by Plaintiff. Stephens' declarations credibly explains the standard procedures of the onboarding process and that Plaintiff's username and ID contained the last four digits of Plaintiff's social security number such that there is a sufficient "security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Through the onboarding system standard process and procedures, only Plaintiff had access to his username and password—Plaintiff offers no evidence that any other person had access to this information. All

the same IP address. Plaintiff's only evidence is that he has no recollection [*15] of reviewing these documents, but Plaintiff does not deny doing so. Unlike Ruiz and Fabian, where the declarations were conclusionary, the court finds that, here, Defendants' evidence sufficiently explains in detail the onboarding process to authenticate the arbitration agreements.

The court finds that it is more likely than not that Defendant could not have had Plaintiff's signature on the 2018 arbitration agreement unless Plaintiff underwent the onboarding process and filled out that information himself. In Plaintiff's opposition, Plaintiff does not testify that someone else had access to his personnel record and/or forged his name. The court finds that viewing the totality of evidence, although conflicting, it is more likely than not and more credible than not that Plaintiff completed the onboarding process, which included electronically signing the arbitration agreement. It is less credible that Defendants would engage in some scheme to obtain Plaintiff's personal information without his knowledge and falsify/forge Plaintiff's onboarding documents without Plaintiff's knowledge or consent. Defendants have met their burden of establishing the existence of the arbitration agreement [*16] by the preponderance of evidence.

Unconscionability

Plaintiff argues that the arbitration agreement is procedurally unconscionable because it was a condition of Plaintiff's employment, that Defendants did not explain arbitration to Plaintiff, and that Defendants did not attach a copy of the ADR rules.

Any procedural unconscionability here is low. (See Serpa v. California Surety Investigations, Inc. (2013) 215 Cal.App.4th 695, 704 ("[The] adhesive aspect of an agreement is not dispositive. [Citation.] When _ there is no other indication of oppression or surprise, 'the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high.'"); Lagatree v. Luce, Forward, Hamilton & Scripps (1999) 74 Cal.App.4th 1105, 1127 ("[A] compulsory pre-dispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis."); Graham v. Scissor-Tail, Inc. (1981) 28 Cal.3d 807, 817-818 (adhesion contracts are "an inevitable fact of life for all citizens—businessman and consumer alike"). The failure to attach a copy of the ADR rules, in and of itself, does not render an agreement procedurally unconscionable where the rules are easily accessible to the parties on the internet. (Lane v. Francis Capital Management LLC (2014) 224 Cal.App.4th 676, 691.) Here, the arbitration agreement expressly states [*17] that the "AAA Rules

As for substantive unconscionability, Plaintiff argues that the agreement is unconscionable because it creates a private forum for its proceedings and conducts them similar to a public court such that the action is no longer the informal and expeditious arbitration proceeding favored by the FAA. (Citing AT&T Mobility LLC v Concepcion (2011) 563 U.S. 333, 351. Concepcion, however, dealt with a class action lawsuit and preemption rules. The court held that California law applied, which prohibited class waivers in arbitration agreements as unconscionable. (Id. at 333) Because arbitration would not serve the purpose of the FAA (a class action arbitration would not lead to the efficient and speedy dispute resolution), the FAA did not preempt California law. (Id. at 345.) Although the case does not stand for the proposition that an arbitration agreement that incorporates the Federal Rules of Civil Procedure is, in and of itself, substantively unconscionable, the court severs, strikes, and deletes the requirement for following or employing the Federal Rules of Evidence and the Federal Rules of Civil Procedure in the arbitration. The court also severs, strikes, and deletes "without a hearing on the merits" from the fourth paragraph on [*18] page 11.

Plaintiff has not established sufficient unconscionability. The motion is granted.

Case management conference is vacated. Telephonic notice is given to defendant's counsel to pay first appearance fee for defendant David Christy.

Non-Appearance Case Review Re: Payment of 1st Appearance Fee is scheduled for 10/26/2021 at 08:30 AM in Department 73 at Stanley Mosk Courthouse.

Clerk is to give notice. Certificate of Mailing is attached.

---

**End of Document**