# Exhibit 2

No *Shepard's* Signal™
As of: August 13, 2024 4:41 PM Z

# Felix v. Amerit Fleet Solutions

Superior Court of California, County of Los Angeles

November 22, 2021, Decided

21STCV14498

**Reporter**

2021 Cal. Super. LEXIS 84670 *

JAIME RENE FELIX, et al. v. AMERIT FLEET SOLUTIONS, INC.

## Core Terms

arbitration, arbitration agreement, electronic, training, signature, injunctive relief, unconscionability, documents, Appearances, employees, password, remedies, terms

**Judges:** [*1] Honorable Carolyn B. Kuhl, Judge.

**Opinion by:** Carolyn B. Kuhl

## Opinion

Civil Division

Central District, Spring Street Courthouse, Department 12

Judicial Assistant: B. Guerrero

Courtroom Assistant: M. Miro

CSR: None

ERM: None

Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s): No Appearances

Other Appearance Notes: Gabriel Pimentel - Plaintiff - LACourtConnect Heather Shook -Defendant - LACourtConnect

**NATURE OF PROCEEDINGS:** Hearing on Motion to Compel Arbitration and Stay the Action;

The matter is called for hearing.

The Court issues a tentative previously and counsel acknowledge receipt of it.

Counsel submit to the Court's tentative ruling.

The Court adopts its tentative ruling as the final order of the Court, as follows:

Court's Ruling: The Motion is granted. The court compels arbitration of Plaintiffs' individual claims and stays these proceedings pending that arbitration.

Plaintiffs Jaime Rene Felix (Felix) and Robert Estupesolis (Estupesolis) filed their Class Action Complaint on April 15, 2021, alleging several causes of action premised on alleged violations of the Labor Code.

Defendant now moves to compel arbitration of Plaintiffs' claims pursuant to the Federal Arbitration Act (FAA) [*2] and to stay all proceedings before this court. Defendant contends that both Plaintiffs electronically signed and entered into an identical arbitration agreement (Agreement).

Defendant Has Met Its Burden of Proving the Existence of an Agreement Covering Plaintiffs' Claims

Defendant has offered sufficient evidence to prove that Plaintiffs electronically signed the Agreement. "An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." (*Civ. Code, § 1633.9, subd. (a)*.) In *Espejo v. Southern California Permanente Medical Group (2016) 246 Cal.App.4th 1047* (Espejo), the court explained how a defendant seeking to compel arbitration could adequately demonstrate that the plaintiff-employee

electronically signed the arbitration agreement:

[The declarant] detailed [the defendant's] security precautions regarding transmission and use of [a job] applicant's unique username and password, as well as the steps an applicant would have to take to place his or her name on the signature line of the employment agreement and the [dispute resolution procedure [*3] or DRP]. Based on this procedure, she concluded that the "name Jay Baniaga Espejo could have only been placed on the signature pages of the employment agreement and the DRP by someone using [the plaintiff's] unique user name and password…. [¶] Given this process for signing documents and protecting the privacy of the information with unique and private user names and passwords, the electronic signature was made by [the plaintiff]" on the employment agreement and the DRP at the date, time, and IP address listed on the documents. These details satisfactorily meet the requirements articulated in *Ruiz [v. Moss Bros. Auto Group, Inc. (2014) 232 Cal.App.4th 836]* and establish that the electronic signature on the DRP was "the act of" [the plaintiff] (*Civ.Code, § 1633.9, subd. (a)*), and therefore provide the necessary factual details to properly authenticate the document.

(*Id. at p. 1062*, italics in original.)

Under Espejo, Defendant has authenticated Plaintiffs' signatures by submitting the declaration of Jennifer Stephens, who is Defendant's "Senior Human Resources Business Partner." (Stephens Decl., ¶ 1.) Ms. Stephens makes her declaration "based on [her] personal knowledge and the information contained in the business records of [Defendant] that are regularly made and kept by [Defendant] in the [*4] regular and ordinary course of business at or near the time of the events that they actually portray." (Stephens Decl., ¶ 2.) Ms. Stephens states:

I have reviewed Plaintiffs' personnel records stored in [Defendants' human resources information systems]. Mr. Felix commenced employment with [Defendant] in or around February 2019, while Mr. Estupesolis commenced employment in or around February 2014, both as Fleet Mechanics.

(Stephens Decl., ¶ 6.)

Ms. Stephens attests as follows with respect to Plaintiff Felix:

At the time Mr. Felix commenced employment in 2019, his offer was contingent upon execution of [Defendant's] Mutual Agreement to Arbitrate Claims … . Upon accepting his offer of employment, [Defendant's] onboarding team sent Mr. Felix a link to his personal email address to its recruiting portal, iCIMS. Mr. Felix could access all onboarding documents, including the Arbitration Agreement, through iCIMS. Mr. Felix would only be able to access iCIMS through the link provided to his personal email address. Upon entering iCIMS, Mr. Felix was prompted to electronically sign [Defendant's] onboarding documents, including the Arbitration Agreement. On January 29, 2019 at 9:52 p.m., Mr. Felix [*5] electronically signed the Arbitration Agreement. The Arbitration Agreement was a separate standalone agreement that was not encompassed in any other document between the parties. Attached hereto as Exhibit 1 is a true and correct copy of the Arbitration Agreement signed by Mr. Felix on January 29, 2019 at 9:52 p.m.

(Stephens Decl., ¶ 9.) Under bolded language constituting an acknowledgment of the Agreement, there is a box with a red check and the following text:

Employee Signature

Jaime Felix Moreno 1/29/2019 9:52 PM

Checking the checkbox above is equivalent to a handwritten signature.

(Stephens Decl., Ex. 1, at p. 5.)

Ms. Stephens attests that, "[a]t the time Mr. Estupesolis commenced employment in 2014, upon accepting an offer of employment, [Defendant] emailed all new hires their requisite onboarding documents, including the arbitration agreement, which employees were required to review, print, sign, and either scan or fax back to [Defendant]." (Stephens Decl., ¶ 7.) "The 2014 offer letter sent to and accepted by Mr. Estupelosis noted that his offer of employment was contingent upon his execution of, among other things, an arbitration agreement." (Stephens Decl., ¶ 8.)

But the relevant [*6] arbitration agreement here was agreed to by Plaintiff Estupesolis in connection with employee training. Defendant "utilizes a learning management system called 'Jump Start' to disseminate training and policy documents to employees." (Stephens Decl., ¶ 10.) Ms. Stephens explains:

To access Jump Start, each employee is required to login using their username and password. [Defendant's] employees should not share their passwords for Jump

Start. After logging into Jump Start, an employee is directed to the Jump Start homepage. Under a tab titled "My Learning Plan" on the Jump Start homepage, Jump Start will list any outstanding tasks that an employee needs to complete, including, for example, trainings or review of policy documents. An employee can then click on the outstanding task to load details regarding the particular training. An employee can also go to the "Learning" tab at the top of the homepage, view their training transcript and review pending trainings. On the right-hand side of the training title, there is a drop-down menu which enables the employee to launch the training. Once the employee clicks "Launch," a new window pops up and allows the employee to either view the training [*7] or review the policy document. After an employee finishes their review and closes the particular training or policy, the button changes to "Mark Complete.' Once the employee clicks "Mark Complete," this changes the button to "Acknowledge." Once the employee selects "Acknowledged," a new screen opens which states "I acknowledge and accept receipt of policy," with two options to either "Cancel" or "Acknowledge." The employee must affirmatively select "Acknowledge" to complete the training.

(Stephens Decl., ¶ 11.)

Ms. Stephens attests:

In 2019, [Defendant] distributed an updated Mutual Agreement to Arbitrate Claims … to Mr. Estupesolis for his review and acceptance. The Arbitration Agreement was a separate standalone agreement that was not encompassed in any other document between the parties. Dan Williams, the CEO of the Company, signed the Agreement on behalf of [Defendant]. Mr. Estupesolis' training transcript shows that he signed the Arbitration Agreement on December 6, 2019 at 4:46:06 A.M. … Attached hereto as Exhibit 3 is the Certificate of Acknowledgment that I printed from Jump Start showing that Mr. Estupesolis successfully acknowledged the Arbitration Agreement. Attached hereto [*8] as Exhibit 4 is a true and correct copy of a screenshot of the transcript showing Mr. Estupesolis signed the Arbitration Agreement.

(Stephens Decl., ¶ 13.) An electronic signature attributed to Plaintiff Estupesolis appears at the bottom of a document titled Mutual Agreement to Arbitrate Claims. (Stephens Decl., Ex. 4.) Exhibit 4 states that "Electronically signing constitutes acknowledgment, agreement, and acceptance to the Mutual Agreement to Arbitrate Claims." (Stephens Decl., Ex. 4.)

The foregoing evidence is sufficient under Espejo to demonstrate that Plaintiffs signed the Agreement. This is especially true here, given that Plaintiffs fail to present any evidence to suggest that they did not sign the Agreement.

It is undisputed that the "Arbitration Agreement Mr. Felix received upon hire was identical to the Arbitration Agreement Mr. Estupesolis received through Jump Start." (Stephens Decl., ¶ 15.) The Agreement clearly covers Plaintiffs' wage-and-hour claims. The Agreement states that "all employment-related disputes between employees and the Company that are not resolved informally shall be resolved by binding arbitration in accordance with the terms set forth below." (Stephens [*9] Decl., Ex. 1, at p. 1.) The Agreement further explains, in bolded text, that the Agreement "provides that virtually any dispute related to employment must be resolved only through binding arbitration." (Stephens Decl., Ex. 1, at p. 1, bolded in original.)

Plaintiffs nonetheless argue that the Motion should be denied because the Agreement does not contain a clear waiver of Plaintiffs' statutory claims. Plaintiffs cite to no relevant case law that would support the proposition that any such specific waiver is required here. Instead, Plaintiffs cite to irrelevant cases addressing collective bargaining agreements. (See Pls' Opp., at p. 3.) The case law cited by Plaintiffs apply the rule that the presumption of the arbitrability of contractual disputes arising out of a collective bargaining agreement do not apply to statutory violations unless the "union-negotiated waiver of employees' statutory rights to a judicial forum … [are] clear and unmistakable." (*Vasquez v. Superior Court (2000) 80 Cal.App.4th 430, 434*, internal citations and quotation marks omitted.) Here, the Agreement is not a collective bargaining agreement and Plaintiffs' discussion of "waiver" is irrelevant to the Motion.

Plaintiffs also make the incorrect statement that "claims [*10] for injunctive relief under the UCL are not arbitrable." (Pls' Opp., at p. 3.) In making this argument, Plaintiffs cite to *Hoover v. American Income Life Ins. Co. (2012) 206 Cal.App.4th 1193, 1209 (Hoover)*. Tellingly, in Hoover, the FAA did not apply to the agreement and the court reached its ruling applying California law. (*Id. at p. 1207*.) Here, by contrast, Plaintiffs have failed to dispute that the FAA applies and thus preempts any conflicting California law. Moreover, the Ninth Circuit has held, and the First District Court of Appeal has noted, that the principle cited in Hoover for denying arbitration of certain UCL claims for injunction is

preempted by the FAA. (Kilgore v. KeyBank, Nat. Ass'n (9th Cir. 2012) 673 F.3d 947, 951; Nelsen v. Legacy Partners Residential, Inc. (2012) 207 Cal.App.4th 1115, 1136.)

The court in Hoover cited to Cruz v. PacifiCare Health Systems, Inc. (2003) 30 Cal.4th 303 (Cruz), where the California Supreme Court held that certain claims of injunctive relief brought on behalf of the public under the UCL are not subject to arbitration. "Assuming Cruz remains good law[,] … Cruz at most stands for the proposition that UCL claims for 'public' injunctive relief are not arbitrable. [Citation.] Cruz does not bar arbitration of a UCL claim for private injunctive relief or restitution … ." (Clifford v. Quest Software Inc. (2019) 38 Cal.App.5th 745, 748 (Clifford), internal citation omitted, but emphasis in original.) Here, Plaintiffs have provided no reason for this court to conclude that Plaintiffs' requested injunctive [*11] relief is, like in Cruz, meant to benefit the public.

But even if Plaintiffs had actually contended that they seek public injunctive relief, that contention would have to be rejected. As the California Supreme Court has noted, "[r]elief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff-or to a group of individuals similarly situated to the plaintiff-does not constitute public injunctive relief." (McGill v. Citibank, N.A. (2017) 2 Cal.5th 945, 955, emphasis added.) Thus, when an employee brings an action seeking injunctive relief on behalf of the defendant's employees, that employee is not seeking "public" injunctive relief. (Clifford, supra, 38 Cal.App.5th at p. 754.)

Arbitration of Plaintiffs' Individual Claims

The Agreement includes a clear waiver of the right to proceed on a class-wide basis in arbitration: "if a court orders that a class, collective, or other representative or joint action should proceed, in no event will such action proceed in the arbitration forum. Claims may not be joined or consolidated in arbitration with disputes brought by other individual(s) unless agreed to in writing by all parties." (Stephens Decl., Ex. 1, at p. 2.)

Defendant thus argues that Plaintiffs' claims should be arbitrated on an individual [*12] basis only. Plaintiffs do not oppose this request.

The Agreement Is Not Unconscionable

"Under California law, the doctrine of unconscionability has a procedural and a substantive element. Both elements must appear in order to invalidate a contract or one of its individual terms." (Mercuro v. Superior Court (2002) 96 Cal.App.4th 167, 174.) "Procedural unconscionability may be proven by showing oppression, which is present when a party has no meaningful opportunity to negotiate terms or the contract is presented on a take it or leave it basis." (Wherry v. Award, Inc. (2011) 192 Cal.App.4th 1242, 1246.) "Substantive unconscionability addresses the fairness of the term in dispute. It traditionally involves contract terms that are so one-sided as to shock the conscience, or that impose harsh or oppressive terms." (Id. at p. 1248, internal citation and quotation marks omitted.) "The party opposing arbitration has the burden of proving unconscionability." (Pinela v. Neiman Marcus Group, Inc. (2015) 238 Cal.App.4th 227, 242, internal citation and quotation marks omitted.) Here, because Plaintiffs fail to show any substantive unconscionability, the court need not address the extent to which any procedural unconscionability was present.

Plaintiffs identify only one provision of the Agreement that they claim is substantively unconscionable. Pointing to that provision, Plaintiffs incorrectly [*13] claim that it improperly limits statutorily imposed remedies. (See, e.g., Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 103 ["an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees"].) The provision in question states:

The arbitrator may award any party any remedy to which that party is entitled under applicable law, whether legal or equitable, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the arbitrator. No remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement.

(Stephens Decl., Ex. 1, at p. 4.) The clear language of the Agreement thus states that Plaintiffs will be entitled to any remedies in arbitration that they would be entitled to in this court. Plaintiffs therefore fail to identify any substantively unconscionable provision in the Agreement.

A Joint Status Report re: Status of Arbitration is to be filed by 9/21/2022.

Non-Appearance Case Review re: Status of Arbitration is scheduled for 09/26/2022 at 04:30 PM in Department 12 at Spring Street Courthouse.

Notice is waived.

---

End of Document