Andrew G. Gunem (SBN 354042)
STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
agunem@straussborrelli.com

*Attorneys for Plaintiff and the Proposed Class*

**THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

**ANGEL JIMENEZ**, on behalf of himself and all others similarly situated,

Plaintiff,

v.

**AMERIT FLEET SOLUTIONS, INC.**,

Defendant.

Case No. 3:24-cv-03315-MMC

**OPPOSITION TO MOTION TO COMPEL ARBITRATION AND DISMISS PUTATIVE CLASS CLAIMS**

[*Declaration of Angel Jimenez filed concurrently herewith*]

Date: November 15, 2024
Time: 9 a.m.
Judge: Maxine M. Chesney
Trial Date: TBD

## TABLE OF CONTENTS

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

MEMORANDUM OF POINTS & AUTHORITIES ..... 1

INTRODUCTION ..... 1

STATEMENT OF ISSUES TO BE DECIDED ..... 1

STATEMENT OF FACTS ..... 2

LEGAL ARGUMENT ..... 4

A. Defendant Has Failed to Meet Its Burden ..... 5

B. The Plain Language of the Agreement Does Not Cover This Dispute ..... 5

1. The Agreement Is Explicitly Limited to Employment-Related Disputes ..... 6

2. Defendant's Cited Cases Are Inapplicable ..... 9

3. Ambiguities Must Be Resolved Against Defendant ..... 10

C. Plaintiff's Claims Stem From an Independent Duty to Protect Plaintiff's Data ..... 10

D. The Arbitration Agreement is Procedurally Unconscionable ..... 12

1. The Agreement is Procedurally Unconscionable as a Contract of Adhesion. ..... 13

2. The Agreement Contains a High Level of Oppression and Surprise. ..... 15

E. Defendant's Forced Arbitration Provision is Substantively Unconscionable ..... 17

CONCLUSION ..... 19

## TABLE OF AUTHORITIES

**Cases**

*A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473 (1982) .......... 17

*Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83 (2000) .......... 12, 13, 14, 15, 16, 17

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) .......... 6

*Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002) .......... 17

*Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101 (9th Cir. 2003) .......... 15, 17

*Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277 (9th Cir. 2009) .......... 7

*Cook v. Univ. of S. California*, 102 Cal. App. 5th 312 (2024) .......... 18, 19

*Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173 (2d Cir. 2021) .......... 8, 10

*Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. 2007) .......... 13

*Doe 1 v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009) .......... 7

*Fabian v. Renovate Am., Inc.*, 42 Cal. App. 5th 1062, 1069, 255 Cal. Rptr. 3d 695 (2019) .......... 5

*Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778 (9th Cir. 2002) .......... 12

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995) .......... 6

*Gerton v. Fortiss, LLC*, No. 15-cv-04805-TEH, 2016 U.S. Dist. LEXIS 19297, 2016 WL 613011 (N.D. Cal. Feb. 16, 2016) .......... 14

*Gonzalez v. CEVA Logistics U.S., Inc*,
No. 16-cv-04282-WHO, 2016 U.S. Dist. LEXIS 150766 (N.D. Cal. Oct. 31, 2016) .............. 14

*Gutierrez v. Autowest, Inc.*,
114 Cal.App.4th 77, 89, 7 Cal.Rptr.3d 267 (2003), *as modified on denial of reh'g* (Jan. 8, 2004) .............................................................................................................. 15

*Hasty v. Am. Auto. Ass'n of N. Cal.*,
98 Cal. App. 5th 1041 (2023) ........................................................................ 14, 17

*Howard v. Goldbloom*
30 Cal. App. 5th 659, 666, 241 Cal. Rptr. 3d 743 (2018)........................................ 11, 12

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002)........................................................................................ 4

*Jackson v. Amazon*.
65 F.4th 1093 (9th Cir. 2023) ........................................................................ 12

*Kilgore v. KeyBank, Nat'l Ass'n*,
673 F.3d 947 (9th Cir. 2012) ........................................................................ 12

*Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*,
501 U.S. 190 (1991)........................................................................................ 6

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
514 U.S. 645 (1995)........................................................................................ 7

*Nagrampa v. MailCoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006) ...................................................................... 13

*OTO, L.L.C. v. Kho*,
8 Cal. 5th 111, 127, 251 Cal. Rptr. 3d 714, 726-27, 447 P.3d 680 (2019)........................ 15, 16

*Oxy-Health, Ltd. Liab. Co. v. H2 Enters.*,
812 F. App'x 660 (9th Cir. 2020)...................................................................... 7

*Palmer v. Omni Hotel Mgmt. Corp.*,
No. 15cv1527 JM(MDD), 2016 U.S. Dist. LEXIS 26464 (S.D. Cal. Mar. 1, 2016)................. 8

*Rice v. Downs*,
248 Cal. App. 4th 175, 189, 203 Cal. Rptr. 3d 555 (2016)........................................ 11

*Sanchez v. Valencia Holding Co., LLC*,
61 Cal. 4th 899 (2015) .................................................................................. 14

*Saunders v. Collabera, Inc.*,
Civil Action No. 20-15207 (MAS) (DEA), 2021 U.S. Dist. LEXIS 143237 (D.N.J. July 31, 2021) ............ 10

*Steelworkers v. Warrior & Gulf Nav. Co.*,
363 U.S. 574 (1960)............ 4

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
871 F.3d 791, (9th Cir. 2017) ............ 6

*Varela v. Lamps Plus, Inc.*,
No. CV 16-577-DMG, 2016 U.S. Dist. LEXIS 189521 (C.D. Cal. July 7, 2016) ............ 9, 10

*Victoria v. Superior Court*,
40 Cal. 3d 734 (1985) ............ 8, 11, 15

*Yu v. Volt Info. Scis., Inc.*,
No. 19-cv-01981-LB, 2019 U.S. Dist. LEXIS 129031 (N.D. Cal. Aug. 1, 2019)............ 10

**Other Authorities**

*Employment Arbitration: The Repeat Player Effect*,
1 Employee Rts. & Employment Poly. J. 189 (1997)) ............ 17

## MEMORANDUM OF POINTS & AUTHORITIES

## INTRODUCTION

First and foremost, Defendant has provided no evidence to show that the Arbitration Agreement relied upon are true and correct copies of any document actually sent to, received or acknowledged by the Angel Jimenez ("Plaintiff") that is the Plaintiff in this case.

Furthermore, Plaintiff's data breach claims have nothing to do with employment. Plaintiff's claims do not depend on his status as an employee, or Amerit Fleet Solutions, Inc.'s ("Defendant" of "Amerit Fleet") status as his former employer. In fact, the events that form the basis of Plaintiff's claims occurred over a year since he originally provided the information as a condition of employment and almost six months *after* the relationship between Plaintiff and Defendant ended. Thus, Defendant's continued retention of Plaintiff's sensitive information and its mishandling of if that led to the data breach was not related to Plaintiff's employment at all. As a result, the arbitration clause asserted by Defendant that purports to require arbitration over employment specific disputes, has no application to this lawsuit.

Even if the Court were to consider the arbitration agreement applicable, it is both procedurally and substantively unconscionable. As a contract of adhesion, this agreement was imposed on the Plaintiff without any opportunity for negotiation, presented as a "take it or lose your job" ultimatum. This created a significant imbalance of power, leaving the Plaintiff with no real choice and no proper understanding of the terms. Furthermore, Defendant's interpretation stretches the excessively broad language of the agreement to cover claims far beyond what could have been reasonably anticipated by either party, reinforcing the inherent unfairness of this one-sided contract. For these reasons, the Court should deny Defendant's motion to compel arbitration and allow Plaintiff to pursue his claims in this forum.

## STATEMENT OF ISSUES TO BE DECIDED

***Issue 1***: Has Defendant proven that the parties entered into a valid contract?

***Issue 2:*** Does the plain language of the "employment-related" arbitration agreement protect Defendant from Plaintiff's data breach claims?

***Issue 3:*** Does Defendant have an independent duty to protect its employees' sensitive data outside of any employment contract?

***Issue 4:*** Is Defendant's arbitration agreement procedurally unconscionable, constituting a contract of adhesion that limits the Plaintiff's ability to negotiate or understand its terms?

***Issue 5:*** Is Defendant's forced arbitration agreement substantively unconscionable thereby invalidating its enforceability?

## <u>STATEMENT OF FACTS</u>

This class action arises from Defendant's egregious failure to safeguard highly sensitive personal identifiable information ("PII") and protected health information ("PHI") of its current and former employees. *Id*. ¶1. As a provider of nationwide fleet maintenance services, Defendant works with seven of the ten largest fleets (including among others, FedEx) in the country, employing technicians, fleet managers, and account managers to support its operations. *Id.* ¶2. In the course of its business, Defendant collects and retains a vast amount of PII/PHI related to thousands of employees, and by accepting this data, Defendant undertook the responsibility to protect it in accordance with internal policies, state law, and federal law. *Id.* ¶14.

In January 2024, cybercriminals gained access to Defendant's data systems, including the private and sensitive information of at least 1,912 individuals, including that of Plaintiff Angel Jimenez. *Id.* ¶¶18, 22. Plaintiff and other breach victims were notified about the breach in early May 2024. *Id*. ¶43. Defendant's own data breach notification confirmed that highly sensitive files—containing names, Social Security numbers, driver's license information, financial account details, and medical records—were left exposed, allowing cybercriminals to access and copy this data without authorization for an unspecified period of time. *Id.* ¶¶19-25. Worse still, because Defendant delayed notifying affected individuals for months, they were deprived of any opportunity to prevent misuse of their data or mitigate the damage that was already occurring. *Id.* The breach was a direct result of Defendant's failure to protect sensitive information by neglecting to implement basic, effective cybersecurity protocols, provide adequate employee training, and maintain reasonable safeguards. *Id.* ¶¶5, 26. Defendant has a ***pattern of negligent data security***,

with employee complaints going back several years. *Id.* ¶32. This negligence left the data of thousands of unsuspecting individuals exposed to cybercriminals. *Id*. ¶¶ 5, 26.

Defendant failed to follow well-known industry practices for safeguarding the sensitive information that it chose to collect and needlessly stored for months beyond its intended purpose. *Id*. ¶77. By neglecting to implement and maintain basic or even reasonable and appropriate data privacy and security measures, Defendant left this sensitive data vulnerable to cyber-attacks. Defendant did this in the face of the known risks of data threats and breaches. The information now in the hands of cybercriminals is highly valuable on the dark web and a known target for data breaches.

Mr. Jimenez, among thousands of others, trusted Amerit Fleet with his sensitive and confidential information. Amerit Fleet abused that trust and failed to safeguard the data, resulting in theft, misuse, and hardship to all its victims. Plaintiff and Class members have suffered a multitude of harms and remain exposed to the imminent threat of fraud and other harm.

And yet, Defendant continues to hold sensitive PII/PHI of Class members, leaving it exposed to the risk of yet another attack. Worse still, current, and future employees will unknowingly entrust their sensitive information to Defendant, putting them at risk of becoming victims of a future data breach due to Defendant's inadequate security measures.

Plaintiff was directly affected by the breach; after providing his PII/PHI as a condition of employment, he trusted that Defendant would adequately protect his sensitive information. *Id.* ¶39. Instead, he later received notice of the breach, which resulted in significant personal and financial harm. *Id.* ¶43.

The consequences of the breach were severe for Plaintiff, who experienced identity theft and fraud, including fraudulent credit applications, unauthorized charges, and unauthorized access to his IRS tax account. *Id.* ¶46. These events led to substantial financial losses and a decrease in his credit score, along with a considerable amount of time spent attempting to rectify the damage. *Id.* ¶¶47, 48. Additionally, Plaintiff has suffered from emotional distress, including

anxiety, sleep disruptions, and ongoing fear regarding the security of his personal information, which has impacted his daily life. *Id.* ¶¶51, 52.

To address these harms, Plaintiff seeks redress for all victims who suffered due to Defendant's mishandling of their private data. *Id.* ¶85. Plaintiff alleges claims for negligence, negligence *per se*, Breach of Implied Contract, Invasion of Privacy, Unjust Enrichment, Breach of Fiduciary Duty, Violations of California's Unfair Competition Law ("UCL"), Violations of California Consumer Privacy Act ("CCPA") and Declaratory Judgment. *Id.*

Now, instead of taking responsibility for the harm caused by its shortcomings, Defendant seeks to evade meaningful accountability by hiding behind its employment arbitration agreement, leaving thousands of loyal current and former employees who have suffered to fend for themselves. Defendant relies on an arbitration agreement that Plaintiff never agreed to, and even if Plaintiff had signed it, the agreement would not cover Plaintiff's data breach claims and is otherwise unenforceable due to both procedural and substantive unconscionability.

## **LEGAL ARGUMENT**

The Court should deny Defendant's motion to compel arbitration and allow Plaintiff to proceed in this forum. First, "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [they have] not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).

Here, Defendant's arbitration agreement is limited to specific employment-related claims, and it was drafted by Defendant. Defendant could have been worded to cover broader disputes, but it did not. The agreement expressly contemplates claims arising from the employment relationship, such as violations of the Fair Employment and Housing Act or the Fair Labor Standards Act. It does not cover claims, such as this one, related to data breaches unconnected to Plaintiff's employment.

Second, even if the arbitration agreement is interpreted to cover disputes beyond the employment relationship, it is unconscionable and should not be enforced. Procedurally, it is a

contract of adhesion—a take-it-or-leave-it agreement—and is now being applied in an unreasonable context. Substantively, Defendant's interpretation would force Plaintiff and others to waive significant legal rights and effectively forfeit any meaningful opportunity to provide relief to the victims of Defendant's data breach.

The arbitration agreement is procedurally and substantively unconscionable: it lacks mutuality, is of infinite duration, and seeks to cover disputes far beyond what the parties reasonably expected. For these reasons, the Court should deny Defendant's motion in its entirety.

**A. Defendant Has Failed to Meet Its Burden**

Defendant has not provided sufficient evidence to prove that the Angel Jimenez, who is the Plaintiff in this case, and not someone else with the same name, signed the arbitration agreement. Defendant relies entirely on the declaration of Jennifer Stephens ("Stephens Decl.") to enforce its Arbitration Agreement against Plaintiff. ECF 19-1. However, Plaintiff Jimenez denies ever signing or seeing an arbitration agreement with Amerit Fleet. Exhibit 1, Jimenez Decl. ¶ ¶¶9-13, 18, 20. This raises significant doubt as to whether the document is associated with Plaintiff and not someone else, and the Stephens declaration fails to resolve that doubt.

The Stephens declaration offers no factual basis to confirm that the arbitration agreement was signed by the Angel Jimenez who is the Plaintiff here. See, Stephens Decl. ¶¶ 7-11. It does not explain how Amerit Fleet verified that the Plaintiff, and no one else, signed the agreement, instead relying solely generalized statements about Amerit Fleet's standard onboarding process. *Id.* Her declaration does not reference any specific documents or personal identifiers (for example, the email that the documents were allegedly sent to), or even any specific dates tied to Plaintiff's individual hiring.  Relying on generic onboarding process is not sufficient proof that this Plaintiff signed or agreed to this specific arbitration agreement. *Fabian v. Renovate Am., Inc.*, 42 Cal. App. 5th 1062, 1069, 255 Cal. Rptr. 3d 695, 702 (2019)

**B. The Plain Language of the Agreement Does Not Cover This Dispute**

In this case, Plaintiff's claims, "arise from and relate to" Amerit Fleet's data breach and the actions that facilitated and exacerbated it, which occurred long *after* Plaintiff's brief

employment with the company. These claims do *not* “arise out of or relate to” the work Plaintiff performed as a Trailer Technician or Defendant’s responsibilities as an employer. They do not relate to Plaintiff’s rights as an employee or to the circumstances surrounding the termination of the employment relationship. Importantly, Plaintiff’s claims do not in any way depend on any actions or inactions that took place *during* Plaintiff’s employment with Amerit Fleet. Therefore, they fall outside the scope of the arbitration provisions, and the parties did not agree to arbitrate these matters.

The object of an arbitration clause is to implement a contract, not to transcend it. *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 205 (1991). Whether an arbitration clause encompasses a plaintiff’s claims turns on its interpretation; it is a “matter of contract” that requires the court “to honor parties’ expectations.” *United States ex rel. Welch v. My Left Foot Children’s Therapy, LLC*, 871 F.3d 791, 797 (9th Cir. 2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011)). Arbitration is a way to resolve disputes, “but only those disputes that the parties have agreed to submit to arbitration.” *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Here, it is clear from the face of Defendant’s arbitration agreement that it is limited to resolving employment disputes. The claims arising from Defendant's failure to safeguard Plaintiff’s PII/PHI after Plaintiff’s employment thus fall well outside its scope.

**1. The Agreement Is Explicitly Limited to Employment-Related Disputes**

Here, the arbitration clause does not apply to Plaintiff’s data breach claims because it is explicitly limited to "employment disputes." The "Covered Claims" are defined as “any claims arising out of or relating to Employee's employment at the Company or the termination of that employment.” Ex. 1 to Stephens Decl., ECF 19-2. The problem here is that this case has nothing to do with Plaintiff’s brief employment with Amerit Fleet.

The words “arising out of” are “relatively narrow as arbitration clauses go” and “understood to mean originating from, having its origin in, growing out of or flowing from.” *My Left Foot Children’s Therapy, LLC*, 871 F.3d at 798 (9th Cir. 2017) (internal citations omitted).

The Ninth Circuit addressed this issue in *Oxy-Health, Ltd. Liab. Co. v. H2 Enters.*, 812 F. App'x 660, 661 (9th Cir. 2020). There, the plaintiff agreed to arbitrate disputes "arising out of, relating to, or resulting from [his] employment with the company" and, like here, the list of examples of claims covered included statutes concerning employment issues. *Id.* The Ninth Circuit held that the plaintiff's trademark claims were not covered by the arbitration agreement which the court held, was limited to employment-related disputes. The Court reasoned that "[b]y its own terms, the agreement is limited to the employment relationship," emphasizing that courts must "give effect to every part" of the agreement, with "each clause helping to interpret the other." Thus, even the clause stating "this agreement to arbitrate also applies to *any* disputes the company may have with you"—which is far broader than Defendant's arbitration agreement—was deemed limited to employment-related disputes. *Id.* (quoting, *Comedy Club, Inc. v. Improv West Assocs*., 553 F.3d 1277, 1285 (9th Cir. 2009)).

Here, when viewed in its entirety, the arbitration agreement clearly applies only to disputes directly related to Plaintiff's employment—not to post-employment claims stemming from data breaches. The agreement specifically lists claims under the Fair Labor Standards Act and Title VII, which are directly tied to the employment relationship. Notably absent from the list are claims related to "data breaches," "cybersecurity," or even "privacy" violations, further confirming the agreement's limited scope. Contracts should be interpreted based on their plain language, and this arbitration agreement applies only to employment-related disputes, not post-employment data breach claims. *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).

The same reasoning applies with even greater force in this case. Plaintiff's data breach claims do not arise out of or relate to his employment or any action or occurrence during his employment. "If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, the phrase would not have much limited power because really universally, relations stop nowhere." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995).

The plain language of the agreement only applies to claims “arising out of or relating to employment,” meaning its scope is restricted to disputes that occurred during employment. Claims regarding a data breach after Plaintiff’s employment clearly do not fall within these terms. *Victoria v. Superior Court*, 40 Cal. 3d 734, 744 (1985) ("Because arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). Here, the plain language of the agreement is expressly limited to claims “arising out of or relating to employment,” meaning its scope is restricted to disputes that occurred during the course of employment.

Plaintiff’s claims against Amerit Fleet arose from a data breach that occurred *after* the employment relationship had ended, and well beyond any period of time contemplated by the agreement. Post-employment obligations, such as safeguarding personal data, were not anticipated or agreed to when the arbitration agreement was signed. Extending the arbitration agreement to cover post-employment data breaches would contradict the parties' intent and improperly expand the agreement’s scope. *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 176 (2d Cir. 2021). Courts have consistently rejected such overreach, emphasizing that arbitration is a matter of contract, and consent to arbitrate must be clear and unambiguous. *Palmer v. Omni Hotel Mgmt. Corp*., No. 15cv1527 JM(MDD), 2016 U.S. Dist. LEXIS 26464, at *13-15 (S.D. Cal. Mar. 1, 2016)

Even if Plaintiff’s private data was initially collected for employment purposes, the Arbitration Agreement is entirely silent on Amerit’s practices concerning the collection, use, and safeguarding of that data. The agreement fails to provide Plaintiff with any reasonable notice that Amerit would retain and mishandle private data long after the employment relationship ended. This omission is critical because the agreement does not address the company's duties related to data protection, which lies at the heart of Plaintiff’s claims.

To prevail, Plaintiff must prove that Defendant breached its duty to safeguard private data it collected and stored, but he does not need to make any showing with respect to his employment with Amerit Fleet. In *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 176 (2d Cir. 2021),

the Second Circuit held that claims unrelated to the employment relationship, such as mismanagement of funds, were outside the scope of the employment-related arbitration agreement. The same logic applies here: Plaintiff's claims arise from a data breach caused by Defendant's failure to protect private information, a matter entirely separate from the employment relationship.

The mere fact that the data was collected during employment only explains how Defendant came into possession of it. It does not transform Defendant's negligent failure to safeguard that data into an employment-related dispute. Therefore, this Court should deny Defendant's motion to compel arbitration, as Plaintiff's claims fall outside the scope of the arbitration agreement.

Moreover, even if any ambiguity existed, it must be resolved against the drafter—here, the Defendant. Consequently, Plaintiff's claims related to the data breach should be litigated in court, where they properly belong.

**2. Defendant's Cited Cases Are Inapplicable**

Defendant's assertion that Jimenez's claims "fall directly within the MAAC's scope" is fundamentally flawed, and the cases cited in support are inapposite.

First, *Varela v. Lamps Plus, Inc.*, No. CV 16-577-DMG, 2016 U.S. Dist. LEXIS 189521 (C.D. Cal. July 7, 2016), is clearly distinguishable. In *Varela*, the plaintiff was a current employee at the time of the data breach, and the arbitration agreement broadly covered "any and all disputes, claims, or controversies arising out of or relating to this Agreement." In contrast, Jimenez's arbitration agreement is narrowly limited to claims "arising out of or relating to Employee's employment at the Company or the termination of that employment." Unlike *Varela*, where the breach occurred during the plaintiff's employment, Jimenez's claims stem from a data breach *after* his employment ended. Once Jimenez's employment ceased, so did the obligations and scope of the arbitration agreement, which does not extend to post-employment claims unrelated to employment or its termination.

Similarly, *Saunders v. Collabera, Inc.*, Civil Action No. 20-15207 (MAS) (DEA), 2021 U.S. Dist. LEXIS 143237 (D.N.J. July 31, 2021), involved an arbitration agreement analogous to *Varela*, with broad coverage not present in Jimenez's agreement. *Yu v. Volt Info. Scis., Inc.*, No. 19-cv-01981-LB, 2019 U.S. Dist. LEXIS 129031 (N.D. Cal. Aug. 1, 2019), also offers no guidance here, as it addressed a delegation clause, not the scope of claims arising after employment.

Defendant's argument that the Arbitration Agreement's reference to "former employees" somehow covers claims which come to being after the employment relationship (and thus the agreement) is terminated, is equally flawed. The term "former employee" does not expand the agreement to cover claims arising after employment ends and unrelated to actions taken during the employment period. Jimenez's claims are not based on his employment, but on how Amerit mishandled his personal data *after* his employment ended.

Lastly, Defendant's attempt to mischaracterize Jimenez's claims as seeking to hold Defendant liable for the conduct of a third party is inaccurate. To be clear, Jimenez's claims arise from *Defendant's* own failure to safeguard his data—not the actions of an unauthorized third party that was able to take advantage of an opportune situation.

**3. Ambiguities Must Be Resolved Against Defendant**

Finally, any ambiguity in the scope of the arbitration agreement must be resolved against the drafter—Defendant in this case. *Cooper*, 990 F.3d at 181. The agreement does not clearly and unambiguously extend to Plaintiff's data breach claims, and therefore, those claims should be litigated in court.

For the reasons stated above, the arbitration agreement does not apply to Plaintiff's data breach claims. The Court should deny Defendant's motion to compel arbitration and allow Plaintiff to proceed in this forum.

**C. Plaintiff's Claims Stem From an Independent Duty to Protect Plaintiff's Data**

Plaintiff's claims do not "arise from or relate to" the employment contract because Defendant's duty to safeguard Plaintiff's PII is an "independent duty" unrelated to the contract.

No matter how Defendant collects and maintains PII, it has duties to safeguard it. In fact, even though there was no reason for Defendant to maintain Plaintiff's PII after he left the company, Defendant elected to anyway, accepting duties under the CCPA and common law. Those duties exist "independently" from the Agreement and would apply even if the parties never executed a contract. As a result, Plaintiff's claims do "not arise from the agreement" itself—but from defendant's "independent" duty—and thus "fall[] outside the scope of the arbitration provision." *Rice v. Downs*, 248 Cal. App. 4th 175, 189, 203 Cal. Rptr. 3d 555, 566 (2016). In other words, Plaintiff is not suing as an employee under the contract, but as a claimant under the CCPA and common law. The contract is not at issue, and neither are its arbitration terms.

This scenario reflects those found throughout caselaw. In the employment context, courts hold that employees can sue their employers in court even if they executed agreements with "broad" arbitration clauses. *Ramos v. Superior Court*, 28 Cal. App. 5th 1042, 1053, 239 Cal. Rptr. 3d 679, 690 (2018). So long as the claim is not "rooted in" the contract itself, the employee may pursue their employer in court. *Id*.

For example, in *Howard v. Goldbloom*, an employee had agreed to arbitrate claims "arising out of or in any way related to" his employment—language that mirrors the language at issue here. 30 Cal. App. 5th 659, 666, 241 Cal. Rptr. 3d 743, 748 (2018). After separation, the employee sued his employer under a stock agreement with the company, alleging the company had diluted his shares. *Id*. In response, the employer moved to compel arbitration, noting that the employee had received "much of his company stock as compensation for his employment with, and separation from, the company"—arguing his claims related to the agreement as a result. *Id*. at 751. But the court held that connection did not matter, as it did not "affect defendants' independent obligations not to breach their fiduciary duties to [plaintiff.]" *Id*. Indeed, the employer "would have owed [plaintiff] the same duty if he had acquired the stock in a completely different manner, for example by purchasing it from a third party, or if the only shares he owned were those he acquired before he began working for the company." *Id*. at 752.

The Ninth Circuit built on this principle in *Jackson v. Amazon*. 65 F.4th 1093, 1102 (9th Cir. 2023). There, an Amazon driver sued Amazon for snooping on social media groups he participated in, alleging that snooping violated his privacy rights. *Id*. Amazon moved to compel arbitration citing its "broad" agreement and arguing plaintiff's claims "related to" his employment because they would not have arisen with it. *Id*. at 1095. In rejecting that notion, the Ninth Circuit held that "misconduct unrelated to the performance of job duties" cannot "relate to" an employment agreement, meaning claims related to that misconduct fell "outside" the agreement's arbitration terms. *Id*. at 1103 (collecting cases from the Fifth and Eleventh Circuits repeating the same principle).

So too here. The Agreement is not the "vehicle that created and embodied the obligations that were the subject of the action." *Howard*, 241 Cal. Rptr. 3d 743, 750. Instead, the "vehicles" for Plaintiff's claims are the CCPA and common law duties to safeguard PII. Those duties would exist even if the parties never executed the Agreement and Plaintiff would assert the same claims in its absence.

**D. The Arbitration Agreement is Procedurally Unconscionable**

Under California law, an arbitration agreement must meet certain minimum standards of fairness to be enforceable. *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 113 (2000). A finding of unconscionability requires both a procedural and substantive element: procedural unconscionability focuses on "oppression" or "surprise" due to unequal bargaining power, while substantive unconscionability examines whether the terms produce "overly harsh" or "one-sided" results. *Id.* at 99. These elements are assessed on a sliding scale: the more substantively unfair a provision is, the less procedural unfairness is required, and vice versa. *Kilgore v. KeyBank, Nat'l Ass'n*, 673 F.3d 947, 963 (9th Cir. 2012).

While the Federal Arbitration Act (FAA) enforces arbitration agreements, it allows for invalidation under state law defenses such as unconscionability. *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002). California courts, applying this defense, have long held that an arbitration agreement is unenforceable when it lacks fairness, as outlined in *Davis v.*

*O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007), and *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006).

Here, the arbitration provision in question is both procedurally and substantively unconscionable. Procedurally, it is a classic contract of adhesion, presented as a condition of employment with no opportunity for meaningful negotiation less risk losing gainful employment. Plaintiff had no choice but to accept the arbitration clause in order to work for Defendant, which demonstrates the "oppression" necessary to find procedural unconscionability.

Substantively, the agreement is one-sided and overly broad. Under Defendant's interpretation, it forces Plaintiff to arbitrate not only employment-related disputes but also unrelated claims, such as those arising from Defendant's failure to safeguard private data, which should fall outside the employment context. California law requires that arbitration agreements be balanced and fair, not unduly favoring the employer at the expense of the employee's rights. The provision here, as interpreted by Defendant, imposes an overly harsh burden on Plaintiff, compelling arbitration even for claims with no connection to employment.

Because the arbitration agreement is both procedurally and substantively unconscionable, it is unenforceable under California law. Accordingly, the Court should deny Defendant's motion to compel arbitration.

**1. The Agreement is Procedurally Unconscionable as a Contract of Adhesion.**

The arbitration agreement at issue is procedurally unconscionable because it is a contract of adhesion. Procedural unconscionability begins with determining whether the contract was one of adhesion, which is defined as "a standardized contract, drafted and imposed by the party with superior bargaining power, leaving the other party no choice but to adhere to or reject it." *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 113 (2000) (citing *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 816-19 (1981)).

Under California law, contracts of adhesion are inherently procedurally unconscionable. As the California Supreme Court stated, "the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability." *Sanchez v. Valencia Holding Co., LLC*,

61 Cal. 4th 899, 913-15 (2015). This applies especially in preemployment arbitration agreements, where the economic pressure on employees to accept such terms can be "particularly acute," as they may have no real ability to refuse the arbitration requirement and still obtain the job. *Hasty v. Am. Auto. Ass'n of N. Cal.*, 98 Cal. App. 5th 1041, 1055-56 (2023) (citing *Armendariz* at 115).

In this case, the arbitration agreement is a classic contract of adhesion. It was a standardized document prepared by Defendant and presented to Plaintiff on a "take it or lose your job" basis. As Defendant admits, Plaintiff had already accepted the employment position *before* being presented with the arbitration agreement, which explicitly states that failure to sign it would result in termination. Defendant's own Declaration of Stephens confirms that "all new hires have been required to sign an arbitration agreement as a condition of employment," (Stephens Decl. ¶7) and the agreement itself states in no uncertain terms:

> "**This agreement is a condition of employment. An employee's failure to sign this agreement does not change the employer's intent that all employees be bound by the Agreement and the terms set forth below. If an employee fails to affirmatively opt out of this Agreement, (s)he will be bound by its terms. To be clear, expressing a desire to opt out of the Agreement will disqualify the employee from working for the company.**"

(Ex.1 to Stephens Decl., emphasis in original) Moreover, although the agreement mentions the option to opt out, it does not provide a procedure or explanation for *how* to do so. *Gonzalez v. CEVA Logistics U.S., Inc*, No. 16-cv-04282-WHO, 2016 U.S. Dist. LEXIS 150766, at *15 (N.D. Cal. Oct. 31, 2016) ("An employer does not provide employees a meaningful opportunity to opt out of an arbitration agreement when it fails to provide any opt-out procedure and does not otherwise explain to employees that they may opt out."), citing, *Gerton v. Fortiss, LLC*, No. 15-cv-04805-TEH, 2016 U.S. Dist. LEXIS 19297, 2016 WL 613011, at *5 (N.D. Cal. Feb. 16, 2016). In *Gerton*, the court rejected the idea that employees could have opted out of an agreement by simply choosing not to sign it, explaining that "even assuming that failing to initial the line would suffice to opt out, such a procedure for opting out is not described anywhere in the

Arbitration Agreement." *Id*. The lack of any opportunity for Plaintiff to negotiate or opt out of the arbitration agreement further underscores the degree of procedural unconscionability in this case.

Plaintiff was "not given 'reasonable notice of [the] opportunity to negotiate or reject the terms of a contract, and ... an actual, meaningful, and reasonable choice to exercise that discretion.'" *Parada v. Superior Court*, 176 Cal.App.4th 1554, 1570-71, 98 Cal.Rptr.3d 743 (2009) (quoting *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1106 (9th Cir. 2003)). The clause is, therefore, procedurally unconscionable.

As the California Supreme Court has noted, in the context of "preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." *Armendariz v. Found. Health Psychcare Servs., Inc*., 24 Cal. 4th 83, 115, 99 Cal. Rptr. 2d 745, 768, 6 P.3d 669, 690 (2000); *see also, OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 127, 251 Cal. Rptr. 3d 714, 726-27, 447 P.3d 680, 691 (2019) ("economic pressure can also be substantial when employees are required to accept an arbitration agreement in order to *keep* their job.") (emphasis in original). As such, Defendant's arbitration provision is procedurally unconscionable.

Because the contract at issue is a form contract presented to Plaintiff on a take-it-or-leave-it basis, with no opportunity to negotiate its terms, it is a contract of adhesion, and is, therefore, procedurally unconscionable. *Id.*; *see also Gutierrez v. Autowest, Inc.*, 114 Cal.App.4th 77, 89, 7 Cal.Rptr.3d 267, 276-277 (2003), *as modified on denial of reh'g* (Jan. 8, 2004) (The plaintiff "either had to accept the arbitration clause and the other preprinted terms, or reject the lease entirely. Under these circumstances, the arbitration clause was procedurally unconscionable.").

**2. The Agreement Contains a High Level of Oppression and Surprise.**

The Arbitration Agreement in this case exhibits a high level of both oppression and surprise, as defined by California law. In *OTO, L.L.C. v. Kho*, the California Supreme Court identified several factors to assess whether an agreement involves procedural unconscionability.

These factors include: (1) the time provided to review the contract; (2) the pressure to sign; (3) the length and complexity of the contract; (4) the education and experience of the party; and (5) whether the party was aided by legal counsel in reviewing the agreement. *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 127 (2019).

The *OTO* Court emphasized that "courts must be 'particularly attuned' to the danger of oppression and overreaching," in both "the prehiring and posthiring settings." *Id.*, 8 Cal. 5th 111, 127, 251 Cal. Rptr. 3d 714, 726-27, 447 P.3d 680, 691 (2019), quoting, *Armendariz*, at 115. That is, the "economic pressure can also be substantial when employees are required to accept an arbitration agreement in order to *keep* their job. Employees who have worked in a job for a substantial length of time have likely come to rely on the benefits of employment. For many, the sudden loss of a job may create major disruptions, including abrupt income reduction and an unplanned reentry into the job market." *Id.*

Here, the agreement was introduced to Plaintiff, Mr. Jimenez, only after he had already accepted the job offer. He was unaware of the arbitration agreement when he accepted his employment in December 2022, and, according to Defendant, only later received an email with a hyperlink to Defendant's onboarding portal, which included the arbitration agreement. Jimenez Decl. ¶9 This lack of prior knowledge of the arbitration requirement is a clear element of surprise, and the fact that the arbitration agreement was a condition of employment adds an element of oppression.

Moreover, Plaintiff was pressured to quickly sign the onboarding documents to secure his employment, leaving him without the time or opportunity to seek legal counsel. Jimenez Decl. ¶¶ 5-6. Even if Plaintiff did receive the Arbitration Agreement, which is in doubt, he, as a non-lawyer, whose native language is Spanish, was also faced with a legal agreement filled with technical jargon, further contributing to the procedural unconscionability. Jimenez Decl. ¶¶ 2, 7, 8. Plaintiff's native language is Spanish and no one from Amerit Fleet provided him with assistance or explanation. Jimenez Decl. ¶7. Instead, Plaintiff's sister had to help him navigate the documents and process. Jimenez Decl. ¶ 8.

In *Hasty v. American Automobile Association of Northern California, Nevada & Utah* (2023), the court affirmed the denial of an employer's motion to compel arbitration due to unconscionability, citing the employer's imposition of an adhesive arbitration agreement as a condition of employment. Similarly, here, Mr. Jimenez was offered no meaningful choice but to adhere to the arbitration agreement if he wanted the job. *Hasty* further supports the conclusion that the Arbitration Agreement in this case is procedurally unconscionable and unenforceable.

Therefore, given the significant level of oppression and surprise, as well as the lack of fairness in the process, the Arbitration Agreement should not be enforced.

**E. Defendant's Forced Arbitration Provision is Substantively Unconscionable**

Because the procedural unconscionability of the Arbitration Agreement is high, a lesser degree of substantive unconscionability is needed to render the agreement unenforceable. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 115 (2000). However, this case involves not just a lesser degree but an extremely high level of substantive unconscionability.

Substantive unconscionability focuses on whether the terms of the agreement are so one-sided that they "shock the conscience." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003). Courts evaluate the terms of a contract as of the time it was made, considering whether they are overly harsh or unjust. *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002) (citing *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 487 (1982)).

Any arbitration agreement inherently imposes disadvantages on employees, including the waiver of a jury trial, limited discovery, and restricted judicial review. *Armendariz*, 24 Cal. 4th at 115. Moreover, studies show that arbitration tends to favor employers, particularly when they are repeat players in the arbitration system, as arbitration can reduce both litigation costs and the size of awards employees receive. *Id.* at 115 (citing Bingham, *Employment Arbitration: The Repeat Player Effect*, 1 Employee Rts. & Employment Poly. J. 189 (1997)).

In this case, Defendant's expansive interpretation of the arbitration agreement makes it shockingly one-sided. While such provisions may be permissible in employment disputes like wrongful termination, no reasonable employee would expect that, by signing an arbitration

agreement during on boarding, they would be waiving the right to sue for unrelated claims—such as a data breach—years after their employment ended. This overreach demonstrates a lack of mutuality and fairness in the agreement's scope.

Defendant's interpretation of the Arbitration Agreement—that it applies to all claims, including those unrelated to Plaintiff's employment and those arising long after Plaintiff's employment ended—renders the agreement unconscionably infinite in both scope and duration. California courts have consistently held that arbitration agreements of indefinite scope and duration are unconscionable and therefore unenforceable.

In *Cook v. University of Southern California*, the California Court of Appeals recently found that an arbitration agreement is substantively unconscionable if it is "infinite" as to scope and duration. *Cook v. Univ. of S. California*, 102 Cal. App. 5th 312, 346-348 (2024). An arbitration agreement is deemed infinite when: (1) it requires a plaintiff to arbitrate claims unrelated to their employment, (2) it mandates arbitration of claims against the employer's agents, affiliates, and employees, and (3) it is unlimited in duration. Id. at 349. The court in *Cook* concluded that compelling an employee to arbitrate claims long after the employment relationship ended, and even for matters unrelated to the employment, was evidence of substantive unconscionability. *Id*. at 350.

The present arbitration agreement mirrors the problematic features identified in *Cook*. First, under Defendant's interpretation, the agreement requires Plaintiff to arbitrate non-employment-related claims. For example, Defendant seeks to compel arbitration of claims arising from a data breach that occurred after Plaintiff's employment ended—claims that are unrelated to job performance, compensation, or any employment matter.

Second, Defendant's interpretation imposes an arbitration obligation of indefinite duration, with no clear end date. This means Plaintiff could be compelled to arbitrate claims for the rest of his life, even for incidents occurring years after his employment ended. In *Cook*, the court noted the unconscionability of an arbitration agreement that required an employee to arbitrate claims related to surgery performed at a university-affiliated hospital 15 years after

employment. The same logic applies here. For instance, if Plaintiff were involved in an accident involving Defendant's vehicle 15 years from now, he would still be bound to arbitrate that claim, a result that the *Cook* court found unconscionable.

Lastly, just as in *Cook*, the agreement extends arbitration obligations to a wide range of third-party affiliates of Defendant, without offering Plaintiff any corresponding benefit. The broad and unbounded nature of the arbitration clause grants Defendant's agents and employees the right to compel arbitration indefinitely, with no reciprocal protection for Plaintiff.

In light of these factors, this Arbitration Agreement is clearly unconscionable under the standards established in *Cook*. Its infinite scope and duration, requiring Plaintiff to arbitrate any and all claims potentially for the rest of his life, make it substantively unconscionable. Accordingly, the Court should find the agreement unenforceable.

## **CONCLUSION**

Respectfully, the Court should deny Defendant's motion in its entirety and allow this action to proceed in this forum.

Dated: October 11, 2024

By: */s/ Andrew G. Gunem*

Andrew G. Gunem (SBN 354042)
STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
agunem@straussborrelli.com

*Attorneys for Plaintiff and the Proposed Class*